## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| MARIO TRICOCI HAIR SALONS & | ) | |
| DAY SPAS, LLC d/b/a Tricoci Salon and | ) | |
| Spa, an Illinois corporation | ) | |
| AGENCY, INC., | ) | Case No. 20-cv-07196 |
| Plaintiff, | ) | |
| | ) | Honorable Matthew F. Kennelly |
| v. | ) | |
| | ) | Hon. Mag. Gabriel A. Fuentes |
| CLAUDIA POCCIA and MOLLY SLOAT, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## DEFENDANT MOLLY SLOAT'S ANSWER, AND AFFIRMATIVE DEFENSE TO PLAINTIFF'S VERIFIED COMPLAINT

Defendant Molly Sloat ("Sloat"), through her undersigned counsel, states as follows as her

*Answer and Affirmative Defenses To Plaintiff's Verified Complaint:*

## NATURE OF THE ACTION

1. This is an action seeking preliminary and permanent injunctions, monetary damages, and other relief for injury and continuing threatened harm to Tricoci resulting from, among other conduct, Sloat's misappropriation and dissemination of Tricoci's confidential and trade secret information to herself, Poccia and, upon information and belief, others, Defendant Poccia's tortious conduct in soliciting Sloat for employment by a direct competitor, Sloat's actions in working for a direct competitor while still employed by Tricoci, and Defendants' use of Tricoci's confidential and trade secret information on behalf of a competitor.

**ANSWER:** **Sloat admits that Plaintiff purports to bring certain claims, but denies any wrongdoing, and denies the allegations and legal conclusions of this paragraph.**

2. Tricoci has spent substantial time, effort, and resources in developing its confidential and trade secret information. Defendants, through the course of their employment in marketing and general strategy roles for Tricoci, as well as their general involvement in the leadership of Tricoci, created and became privy to Tricoci's trade secrets and other confidential information, and possess such proprietary and confidential information about, and oversaw and made contacts with, Tricoci's retail contacts over a number of years.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

3. In order to protect Tricoci's valuable confidential and proprietary information, and to protect itself from Defendants' unfair business practices, Tricoci required Defendants to agree, as a condition of and upon commencement of engagement with Tricoci, to restrictive covenants limiting the use and dissemination of Tricoci's confidential and trade secret information, among other requirements.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

4. In the absence of injunctive relief ordered by the Court, Defendants' misconduct, including without limitation contractual breaches, tortious interference, and the actual or threatened misappropriation of trade secrets – all of which was for the benefit of Tricoci's direct competitors and to the detriment of Tricoci - Defendants would succeed in improperly appropriating Tricoci's goodwill and competing unfairly and without investment of the significant time and money that Tricoci has made in developing its product lines and ecommerce platforms.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

5. In the absence of injunctive relief ordered by the Court, irreparable harm would result to Tricoci from continuous violation by Defendants of the obligations they owed and continue to owe Tricoci. As such, Tricoci requires injunctive relief to protect itself from such grave commercial misconduct.

**ANSWER:** Sloat denies the allegations of this paragraph.

## THE PARTIES

6. Mario Tricoci Hair Salons & Day Spas, LLC ("Tricoci") is an Illinois corporation authorized to do and doing business in the State of Illinois.

**ANSWER:** **Sloat admits the allegations of this paragraph.**

7. Upon information and belief, Defendant Claudia Poccia ("Poccia") is and was at all material times, a resident of Connecticut.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

8. Upon information and belief, Defendant Molly Sloat ("Sloat") is and was at all material times, a resident of Illinois.

**ANSWER:** **Sloat admits the allegations of this paragraph.**

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action because Tricoci's claims in this action raise a federal question under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq.* and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). The Court has supplemental jurisdiction over Tricoci's other claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**     **Sloat admits the allegations of this paragraph.**

10.     Venue is proper in this District because Sloat was an Illinois resident when the causes of action alleged herein arose, because the agreements at issue in the instant suit were negotiated and executed in Illinois, because the parties performed the Agreements in Illinois, because the events giving rise to this lawsuit occurred in Illinois, because the breach of fiduciary duty and aiding and abetting of same occurred in Illinois, and because Sloat and Tricoci are domiciled and reside in Illinois.

**ANSWER:**     **Sloat admits the allegations of this paragraph.**

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

### I.     Tricoci's Business

11.     Tricoci opened its doors over forty years ago and has maintained a reputation for being a leading luxury beauty company, which includes high-end salons and spas in the Chicago area, in addition to products sold within those salons and through its website. Tricoci has sold innovative beauty products, including shampoos, conditioners, other hair treatments and products, make-up, and skincare for nearly twenty years through its salons and on its website, making up a significant portion of its profits and contributing to the overall financial stability of the Company.

**ANSWER:     Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

12.     Recently, Tricoci has focused significant resources on growing its private label product line. Tricoci's plan is expanding the sales of its private label products, not only in its salons and through its website, but also by entering national distribution networks. In furtherance of this goal, Tricoci has invested hundreds of thousands of dollars and significant time and energy.

**ANSWER:     Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

13.     In 2018, Tricoci formulated a growth strategy involving a comprehensive redevelopment of Tricoci haircare products and the introduction of new product lines, including cosmetic products, which ultimately culminated in August, 2020 in a highly publicized product

launch of the Tricoci Collection, a vibrant new collection which included updating certain existing products.

**ANSWER: Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

14. This focus on product also included devoting significant resources to developing new beauty products (including a skincare line). Tricoci spent significant expense analyzing the financial viability of its product growth strategy.

**ANSWER: Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

15. Prior to investing hundreds of thousands of dollars in the development of the Tricoci Collection, Tricoci thoughtfully and methodically projected its return on investment, which it estimated to be millions per year in as quickly as five years.

**ANSWER: Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

16. In light of its analysis, Tricoci made the decision to move forward with development of the Tricoci Collection, with the ultimate goal and documented plan of placing the private label brand in wider national distribution networks.

**ANSWER: Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

17. Tricoci hired Claudia Poccia and Molly Sloat to create and run its product rebrand, including the Tricoci Collection and Tricoci's plan to enter national retailers with those products.

**ANSWER: Sloat admits she was hired by Tricoci, but otherwise lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

## II. Claudia Poccia

18. In late 2018, Tricoci began to hire new team members to bring its product strategy to life, including Claudia Poccia, a well-known c-suite executive in the beauty industry with over 30 years of experience.

4

**ANSWER:    Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

19.    In December 2018, Tricoci and Poccia started to explore and frame a consulting agreement, which included Poccia eventually moving from a high-level consulting position into a senior, long-term leadership role with Tricoci.

**ANSWER:    Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

20.    Poccia participated in drafting and negotiating her terms of engagement with Tricoci, including with the assistance of an advisor, before ultimately entering into a Consulting Agreement with Tricoci on February 11, 2019 (the "*Poccia Agreement*"), which is attached hereto as Exhibit 1.

**ANSWER:    Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

21.    As part of the Poccia Agreement, Tricoci gave Poccia a title, (President of Hair and Beauty Products), and significant responsibility, including product formulation, labeling, design and marketing, with the deliverable of creating and ultimately launching the Tricoci Collection for national distribution. (*See* Ex. 1, *Poccia Agreement*, Ex. A thereto).

**ANSWER:    Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

22.    Tricoci put its trust and resources into Poccia (paying her $30,000 a month plus expenses) as a high-level executive, expecting that she would be true to her word and drive forward the development of the Tricoci Collection from top to bottom, including selecting manufacturers, formulas, labeling, pricing, product offerings, and marketing both in the salon setting and elsewhere.

**ANSWER:    Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

23.    Poccia and Tricoci agreed that Tricoci would utilize her experience and contacts in the industry to create key relationships between Tricoci and national retailers such as Ulta, Blue Mercury, and Sephora, with the goal to sell the Tricoci Collection at such retailers and other high-end salons.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

24.     In her role, Poccia had full access to Tricoci's confidential information and Trade Secrets.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

25.     The Poccia Agreement required Poccia to maintain Tricoci's information as confidential "for the longest period . . . permitted by law." (Ex. 1, *Poccia Agreement*, ¶ 9(b)), and contained a restrictive covenant which prohibited Poccia from competing with Tricoci during the term of the agreement and from soliciting Tricoci employees even after her employment ended, (*Id*. at ¶ 8).

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

26.     Upon information and belief, prior to the termination of her Agreement, Poccia began to work with and consult with Blue Mistral (d/b/a Frederic Fekkai) ("Fekkai"), one of Tricoci's competitors in the highly competitive world of retail product placement.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

### III.     Molly Sloat

27.     Also in connection with the Tricoci Collection launch, Tricoci hired Sloat as its Vice President ("VP") of Marketing on March 4, 2019, for which she signed an Employment Agreement that included a confidentiality provision, in addition to various other promises. (*See* Ex. 2, March 4, 2019, *Sloat Employee Agreement* ("*Sloat Agreement*")).

**ANSWER:** **Sloat admits she entered into an Employment Agreement which is attached to the Complaint as Exhibit 1, but denies the remaining allegations of this paragraph.**

28.     Among other duties, the Sloat Agreement required that, during her employment, Sloat use "good judgment, adhere to high ethical standards, and avoid situations that create actual or potential conflicts with the Company," including "[e]ngaging in self-employment in competition with the Company and that, both during and after her employment, not use, share, or otherwise disseminate Tricoci's confidential information," defined therein to include information that is not known to the public, such as chemical formulas, financial information, methods of conducting business, and marketing information. (Ex. 2, *Sloat Agreement*, ¶¶ 1-2).

**ANSWER:** **Sloat admits only that the quoted language appears in the cited document and otherwise denies the remaining legal conclusions and factual allegations of this paragraph.**

29. Sloat agreed that the aforementioned obligations were "reasonable and necessary to protect the Company's legitimate business interests," and that violation of any such obligations "would cause irreparable harm to the Company." (Ex. 2, *Sloat Agreement*, ¶ 6).

**ANSWER:** **Sloat admits only that the quoted language appears in the cited document and otherwise denies the remaining legal conclusions and factual allegations of this paragraph.**

30. Critical to the situation at hand, Sloat also agreed "[w]hen Your employment with the Company ends, You agree to immediately deliver to the Company (or its designee) any Confidential Information or other Company property in Your possession, custody or control. (Ex. 2, *Sloat Agreement*, ¶ 2).

**ANSWER:** **Sloat admits only that the quoted language appears in the cited document and otherwise denies the remaining legal conclusions and factual allegations of this paragraph.**

31. Sloat had responsibility over all Tricoci marketing functions, including responsibility over Tricoci's product rebrand and the Tricoci Collection, with the ultimate goal of introducing the Tricoci Collection to national retailers and becoming a leader in national luxury haircare, skincare, and cosmetic products.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

32. Sloat attended regular meetings (including in person, via phone and via video link) limited to the executive team to present her proposed marketing strategy for the Tricoci Collection and generally, her proposed creative direction, and the resources she would need to bring her vision to fruition, in addition to attending, along with Poccia, regular meetings with the rest of the executive team, in which plans and strategy regarding the product rebrand and launch of the Tricoci Collection were discussed.

**ANSWER:** **Sloat admits she attended certain meetings with Poccia and others, but lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

33. Sloat managed marketing projects with her team, communicated Tricoci's directive to her team, and drove overall strategy and projects forward.

**ANSWER:** **Sloat admits she managed certain marketing projects with her team and communicated Tricoci's directive to her team but denies the remaining allegations of this paragraph.**

34.     Poccia and Sloat created the Tricoci Collection, developed the retail strategy, and were responsible for carrying that strategy through to completion, including conducting research using Tricoci resources, sourcing the competition for appropriate pricing and competitive formulas, and making all strategic decisions related to the launch and planned subsequent efforts to expand the Tricoci Collection's national presence.

**ANSWER:     Sloat admits she worked with Poccia and others during her employment at Tricoci. Sloat denies the remaining allegations of this paragraph.**

### IV. Misappropriation of Tricoci's Trade Secrets

35.     Sloat misappropriated large amounts of confidential information, including financial information, pricing calculations, marketing strategies, competition analysis and comparisons, product design and future product plans, board presentations and other confidential information ("Trade Secrets") by emailing the information, some of which she and Poccia had created on behalf of Tricoci, to her personal email accounts. (*See* Ex. 3, Sampling of cover e-mails sent from Sloat to her personal e-mail accounts throughout her employment with Tricoci).

**ANSWER:     Sloat denies the allegations of this paragraph.**

36.     After she resigned in October 2020, Sloat attempted to erase all data from both her company owned cell phone and her company provided computer before returning them and also provided Tricoci an incorrect password for her company issued phone.

**ANSWER:     Sloat denies the allegations of this paragraph.**

37.     Yet, the data that Sloat was unable to delete is more than sufficient to show that Sloat not only breached the Sloat Agreement, but actively misappropriated Tricoci's Trade Secrets.

**ANSWER:     Sloat denies the allegations of this paragraph.**

38.     Specifically, Tricoci's investigation revealed that Sloat sent Trade Secrets and confidential information to her personal g-mail account or her e-mail account associated with her consulting company, Design Dichotomy, beginning in March 2019 and continuing through the end of her employment.

**ANSWER:     Sloat denies the allegations of this paragraph.**

39.     The information Sloat took includes Tricoci board presentations, product placement, research, financial statements, weekly and quarterly sales information, and marketing plans, among other information.

**ANSWER:     Sloat denies the allegations of this paragraph.**

40.     The Trade Secrets and confidential information that Sloat sent to her personal email accounts were not public, and she did not have the authority to remove it. Sloat did not seek

permission from anyone at Tricoci before sending herself Tricoci's Trade Secrets, in which she violated the Sloat Agreement, statutes, common law, and various Company policies.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

### V. Work for Tricoci's Competitor

41.     As a result of the pandemic, almost overnight, Tricoci's income from its salons came to a screeching halt, forcing Tricoci to cut expenditures, including pausing Poccia's work until things settled down. Poccia continued to work for Tricoci in finishing up a few projects that needed her direction over the next few months.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

42.     At some point in 2020, Poccia began working with a competitor – Fekkai. Much like Tricoci, Fekkai operates salons (and has a well-known stylist founder, Frederic Fekkai) but concentrates its efforts on selling salon products in large distribution chains.

**ANSWER:** Sloat lacks sufficient information to form a belief as to the truthfulness of the

allegations contained in this paragraph, and therefore denies the allegations of this paragraph.

43.     Upon information and belief, Fekkai had sold a product line to Procter & Gamble who distributed the product in retail stores such as Target and Wal-Mart. More recently, Fekkai repurchased the brand and was aiming for exactly what Tricoci was aiming for, namely, distribution in specialized retail stores such as ULTA, Blue Mercury, and Sephora.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

44.     Upon information and belief, Poccia had met with the Fekkai team as early as January 2020 while in Los Angeles on business for Tricoci.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

45.     In addition to Poccia's work with Fekkai, Sloat has admitted that she "began considering alternative consulting positions during the onset of Covid in April 2020," while she was launching Tricoci's ecommerce platform and website and executing plans for the launch of the Tricoci Collection. (Ex. 4, Nov. 2, 2020 E-mail from Sloat's Counsel to Tricoci's Counsel).

**ANSWER:    Sloat admits only that the quoted language appears in the cited document and otherwise denies the remaining allegations of this paragraph.**

46.    During that time, while Sloat was still employed but was making her plans to leave, she e-mailed Tricoci's confidential social media information on June 9, 2020 and contact information of various Tricoci editor outlets on July 7, 2020 to her Design Dichotomy e-mail address.

**ANSWER:    Sloat denies the allegations of this paragraph.**

47.    In the meantime, Sloat and her team continued working on the product rebrand, and Sloat continued to drive strategy, in addition to managing all deadlines and projects for her team. The Tricoci Collection eventually launched in its salons and on its ecommerce platform on August 16, 2020.

**ANSWER:    Sloat denies the allegations of this paragraph.**

48.    Around the same time, Poccia introduced Sloat to Fekkai for purposes of securing an engagement for work by Fekkai, while Sloat was still employed by Tricoci and exhibiting a steady decline in her performance.

**ANSWER:    Sloat admits that, at some point in time, she was introduced to Fekkai but denies the remaining allegations of this paragraph.**

49.    Following introduction to Fekkai and conversations with Poccia about Fekkai, Sloat sent Tricoci's Trade Secrets to herself and Poccia throughout August, September and October, 2020, including financial information, social media policies, marketing information, and product research.

**ANSWER:    Sloat denies the allegations of this paragraph.**

50.    Sloat has admitted that she began working with Fekkai and Bastide, another company related to Fekkai, in or around early September 2020, while she was *still* employed by Tricoci. (Ex. 4, Nov. 2, 2020 E-mail from Sloat's Counsel to Tricoci's Counsel).

**ANSWER:    Sloat admits she performed independent consulting work in early September 2020 but denies the remaining allegations of this paragraph.**

51.    Sloat's phone records show that she was having calls with Poccia and other Fekkai personnel in the middle of the work day in September 2020 and began advising Fekkai as early as September 3, 2020 on its brand book related to colors/photography and typography, including brand guidelines, website typography, visual presentations, and email templates – the precise type of branding and marketing work she had been and was simultaneously performing for Tricoci. (Ex. 4, Nov. 2, 2020 E-mail from Sloat's Counsel to Tricoci's Counsel).

**ANSWER:    Sloat admits she spoke with Poccia and a Fekkai representative at some point in September 2002 but denies the remainder of the allegations of this paragraph.**

52.    During this time, Sloat was frequently absent from Tricoci executive calls and meetings and would often miss important marketing deadlines, putting Tricoci projects on hold and causing irreparable damage.

**ANSWER:    Sloat denies the allegations of this paragraph.**

53.    Not only was Sloat secretly performing services on behalf of a competitor, but she was also neglecting her duties and job responsibilities at Tricoci, thereby compounding Tricoci's long-term financial and reputational harm.

**ANSWER:    Sloat denies the allegations of this paragraph.**

**VI. Sloat's Continued Misappropriation**

54.    On October 1, 2020, the day before Sloat gave Tricoci her two-week notice and *after she had begun her work for Fekkai*, Sloat sent herself five emails with Tricoci Trade Secrets, including information concerning Tricoci's proposed fall initiatives, marketing plans, financial reports, media reports, operational plans, and organizational documents. (*See* Ex. 5, Sampling of cover e-mails from Sloat to her personal e-mail addresses containing Tricoci confidential and trade secret information).

**ANSWER:    Sloat admits that she sent herself emails on October 1, 2020 to prepare Tricoci for her transition out of Tricoci but denies the remainder of the allegations of this paragraph.**

55.    This information was highly confidential and Trade Secrets. Sloat did not have

permission to remove it from Tricoci's network, as required by the Sloat Agreement.

**ANSWER:    Sloat denies the allegations of this paragraph.**

56.    After working with Fekkai for some time, Sloat gave Tricoci her two-week notice on October 2, 2020 simply stating that she was going back to consulting, never mentioning that she had already been working with a competitor and fail    ing to comply with her obligations to return all Tricoci information.

**ANSWER:    Sloat admits she gave Tricoci her two-week notice on October 2, 2020 but denies the remaining allegations of this paragraph.**

**VII. Tricoci's Confidential and Trade Secret Information**

57.    The confidential and trade secret information placed in jeopardy by Poccia and Sloat's conduct includes pricing strategies and analysis, marketing strategies, retailer and market analysis, financial projections and strategies, product development initiatives learned through the

course of research and development, and other information related to the rebrand and development of new products under the Tricoci Collection.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

58.     Tricoci makes regular and consistent efforts to protect these and other Trade Secrets, including the following:

- Each employee and consultant who will have access to such information (including Poccia) is required to sign an agreement with provisions relating to Trade Secrets and other confidential information, similar in form to the provisions agreed to by Sloat;

- Each employee is provided with a unique login and password to access their Tricoci provided computers and are required to maintain password protection on any Tricoci cell phones issued;

- Tricoci's Trade Secret and other confidential information is maintained on Dropbox, a cloud-based network, with password protection. Tricoci's Trade Secret information on Dropbox is shared with its employees on a need-to-know basis;

- Overall strategies and financial documents are not shared with non-executive team members;

- If any employee with access to Dropbox attempts to share documents with third-parties, a notification is sent to Ryan Abud, Tricoci's Vice President of Technology, and he must approve before the document may be sent unless the employee is a high enough level to be considered an "owner" of the document; and

- Tricoci distributes both a Team Member Standards of Conduct and a Technology Use Policy, enclosed within its Employee Handbook, to employees at the start of their employment setting forth the nature of Tricoci's business and that its economic well-being is dependent on protecting and maintaining the confidentiality of its information.

**ANSWER:** **Sloat denies that Plaintiff makes regular and consistent efforts to protect its Trade Secrets. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

59.     Because Poccia and Sloat were on the executive team throughout their tenure with Tricoci, they were provided password-protected broad access to Tricoci's Trade Secrets and other confidential information.

**ANSWER:** **Sloat admits she was provided a password-protected login to access some of Tricoci's IT systems. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

60. Sloat received the Handbook containing the Technology Use Policy and acknowledged receipt of it, just as all other employees must do, affirming that she understood that "[a]ll information, including e-mail messages and files, that are created, sent, or retrieved over the Company's technical resources is the property of the Company, and should be considered private or confidential." (*See* Ex. 6, Employee Handbook; Ex. 7, Sloat Employee Handbook Acknowledgment) and that "[a]ll data, records and intellectual property stored in any form by the Company, including, without limitation, to the Company's computer's storage medium or devices . . . are the property of the Company. Any copying, destruction, deletion or alteration of such data records or intellectual property . . . will subject the perpetrator(s) to disciplinary action up to and including termination and possible criminal prosecution." (Ex. 6, Employee Handbook).

**ANSWER:** **Sloat admits she received the Handbook containing the Technology Use Policy and acknowledged receipt of it and further admits that the quoted language appears in the cited document and otherwise denies the remainder of the allegations of this Paragraph.**

61. The Employee Handbook mirrors the provisions in Sloat's Agreement which urged Sloat to "use good judgment, adhere to high ethical standards and avoid situations that create actual or potential conflicts between the Company's interests and the interests of any third party," including by working for a competitor, engaging in self-employment in competition with Tricoci, and using Tricoci's proprietary information for personal gain. (*See* Ex. 2, *Sloat Agreement*, ¶ 1; *see also* Ex. 6).

**ANSWER:** **Sloat admits only that the quoted language appears in the cited documents and denies the remaining allegations in this paragraph.**

### VIII. Tricoci's Prompt Investigation

62. Tricoci learned on October 20, 2020 that there was a distinct possibility that Poccia and Sloat had been and were currently performing the same services for Fekkai as they did for Tricoci, by way of Poccia accessing and using her Tricoci email to work on a branding project for Fekkai in early October with Sloat while Sloat was still employed by Tricoci.

**ANSWER:** **Sloat denies that she had been and was performing the same services for Fekkai as she did for Tricoci. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

63. As a result, Tricoci began its investigation the next day, which revealed that Sloat had sent herself significant amounts of confidential and Trade Secret information, and that both Sloat and Poccia had confidential and Trade Secret information in their possession when they left and appeared to have used it to Tricoci's disadvantage, while working for Tricoci.

**ANSWER:** **Sloat denies that she sent herself significant confidential and Trade Secret information and that she used any of Plaintiff's confidential and Trade Secret information to Tricoci's disadvantage. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

64.     Immediately thereafter, Tricoci ensured that both Poccia and Sloat did not have access to its information and e-mail system, and conducted an analysis on all Tricoci devices that Poccia and Sloat used, in addition to their Tricoci e-mails.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the allegations of this paragraph.**

65.     The investigation revealed that both Poccia and Sloat had misappropriated Tricoci's most valuable Trade Secrets regarding its future product plans and implementation strategies, including its plans to create strategic partnerships with specialty retailers and that both had been performing work on behalf of a direct competitor, Fekkai, for some time, including at least while Sloat was performing the exact same services for Tricoci.

**ANSWER:** **Sloat denies that she misappropriated Tricoci's most valuable Trade Secrets regarding its future product plans and implementation strategies, including its plans to create strategic partnerships with specialty retailers. Sloat further denies that she had been performing work on behalf of a direct competitor, Fekkai, for some time. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

66.     The investigation also revealed that Sloat had attempted to destroy evidence of her misdeeds by removing certain information from her Tricoci cell phone and Tricoci laptop. Sloat's efforts to hide her misappropriation complicated the investigation, causing it to cost more and take much longer to complete.

**ANSWER:** **Sloat denies that she had attempted to destroy evidence by removing certain information from her Tricoci cell phone and Tricoci laptop. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

67.     Her efforts were successful, in part, and Tricoci was unable to recover all data that Sloat deleted, which would presumably have confirmed more misappropriation and illegal conduct. Tricoci incurred significant expense to perform analysis on Sloat's and Poccia's devices and e-mails.

**ANSWER:** **Sloat denies any allegations that she attempted to destroy evidence. Sloat further denies that she engaged in misappropriation and illegal conduct. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations**

contained in this paragraph, and therefore denies the remaining allegations of this paragraph.

68.     Tricoci sent Sloat notice on October 23, 2020 and Poccia on October 30, 2020 to cease breaching their Agreements and using Tricoci's Trade Secret information for the direct benefit of Fekkai. They were also directed to preserve any and all evidence.

**ANSWER:     Sloat admits that Plaintiff sent her a notice on or about October 23, 2020. Sloat denies she was or is breaching her Agreements and using Tricoci's Trade Secret information for the direct benefit of Fekkai. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

69.     Since then, neither Sloat nor Poccia, through their counsel, were willing to offer any type of assurance, beyond unsworn statements of counsel, that they have not taken confidential or Trade Secret information and are not using it in their current roles, despite Tricoci's assurances that a forensic examination of their devices could be done by a third party and would be subject to confidentiality restrictions including an attorneys' eyes-only provision.

**ANSWER:     Sloat denies the allegations of this paragraph.**

70.     Poccia and Sloat both still have confidential and trade secret information belonging to Tricoci, and they are working for Fekkai, a competitor, doing the same type of work they did for Tricoci.

**ANSWER:     Sloat denies the allegations of this paragraph. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

### COUNT I
(Breach of Contract Against Defendant Claudia Poccia)

71.     Tricoci realleges and incorporates the paragraphs set forth above.

**ANSWER:     Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

72.     Tricoci has at all times relevant to this lawsuit complied with its obligations under the Poccia Agreement.

**ANSWER:     As this allegation and this Count I are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

73.     Poccia signed and agreed to be bound to the terms of the Poccia Agreement with Tricoci. The Poccia Agreement contains confidentiality and non-solicitation restrictive covenants, which are ancillary to a valid agreement and were supported by adequate consideration.

**ANSWER:     As this allegation and this Count I are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

74.     Tricoci has a legitimate interest in protecting its confidential and trade secret information, which derives independent economic value and is not generally known to the public.

**ANSWER:     As this allegation and this Count I are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

75.     The covenants in the Poccia Agreement are reasonable in scope and in all other respects.

**ANSWER:     As this allegation and this Count I are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

76.     In taking the actions described above, Poccia breached the Poccia Agreement with Tricoci, including Paragraphs 8 and 9 thereto.

**ANSWER:     As this allegation and this Count I are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

77.     As a proximate result of Poccia's conduct, Tricoci sustained and will continue to sustain substantial damages in an amount to be proven at trial.

**ANSWER:     As this allegation and this Count I are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

## COUNT II
(Breach of Contract Against Defendant Molly Sloat)

16

78.     Tricoci realleges and incorporates the paragraphs set forth above.

**ANSWER:     Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

79.     Tricoci has at all times relevant to this lawsuit complied with its obligations under the Sloat Agreement.

**ANSWER:     Sloat denies the allegations contained in this paragraph.**

80.     Sloat signed and agreed to be bound to the terms of the Sloat Agreement with Tricoci. The Sloat Agreement contains confidentiality and non-solicitation restrictive covenants, which are ancillary to a valid agreement and were supported by adequate consideration.

**ANSWER:     Sloat admits that she signed the Sloat Agreement that contains certain terms that speak for themselves. Sloat denies the document contains enforceable confidentiality and non-solicitation restrictive covenants, which are ancillary to a valid agreement and were supported by adequate consideration.**

81.     The Sloat Agreement also contains various employee duties, including avoiding conflicts of interest such as engaging in self-employment in competition with Tricoci.

**ANSWER:     Sloat admits that she signed the Sloat Agreement that contains certain terms that speak for themselves. Sloat the remaining allegations of this paragraph.**

82.     Tricoci has a legitimate interest in protecting its confidential and trade secret information, which derives independent economic value and is not generally known to the public.

**ANSWER:     Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

83.     The covenants in the Sloat Agreement are reasonable in scope and in all other respects.

**ANSWER:     Sloat denies the allegations of this paragraph.**

84.     In taking the actions described above, Sloat breached the Sloat Agreement with Tricoci, including Paragraphs 1, 2, and 3 thereto.

**ANSWER:     Sloat denies the allegations of this paragraph.**

85.     As a proximate result of Sloat's conduct, Tricoci sustained and will continue to

sustain substantial damages in an amount to be proven at trial.

**ANSWER:**     **Sloat denies the allegations of this paragraph.**

## COUNT III
(Intentional Interference with Contractual Relationship Against Claudia Poccia)

86.     Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:**     **Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

87.     A valid and enforceable contract exists between Sloat and Tricoci.

**ANSWER:**     **As this allegation and this Count III are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

88.     Poccia had knowledge of the Sloat Agreement, and encouraged Sloat to provide services for a direct competitor, misappropriate Tricoci's confidential information and trade secrets, and use Tricoci's confidential information and trade secrets on behalf of and for the benefit a direct competitor.

**ANSWER:**     **As this allegation and this Count III are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

89.     Poccia intentionally and without justification took actions which procured, and continue to procure, the breach of Sloat's Agreement with Tricoci.

**ANSWER:**     **As this allegation and this Count III are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

90.     As a proximate result of Poccia's conduct, Tricoci has sustained and will continue to sustain substantial damages in an amount to be proven at trial.

**ANSWER:**     **As this allegation and this Count III are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

91.     The acts by Poccia and Sloat as described above were willful, malicious and done with an evil intent. As such, Tricoci is entitled to an award of exemplary and punitive damages

**ANSWER:     As this allegation and this Count III are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

### COUNT IV

(Unjust Enrichment Against All Defendants – Plead in the alternative)

92.     Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:     Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

93.     By their conduct described above, Defendants have been unjustly enriched by retaining a benefit to Tricoci's detriment.

**ANSWER:     Sloat denies the allegations of this paragraph.**

94.     It would be unfair and in violation of the fundamental principles of justice, equity and good conscious to allow Defendants to retain the enrichment they have unjustly acquired.

**ANSWER:     Sloat denies the allegations of this paragraph.**

95.     As a proximate result of Defendants' conduct, Tricoci has sustained and will continue to sustain substantial damages in an amount to be proven at trial.

**ANSWER:     Sloat denies the allegations of this paragraph.**

### COUNT V
(Breach of the Duty of Loyalty Against Defendant Molly Sloat)

96.     Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:     Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

97.     Sloat owed Tricoci a duty of loyalty to act fully and solely for the benefit of Tricoci, and to not provide services or otherwise assist a competitor of Tricoci or any other party without Tricoci's authorization.

**ANSWER:     Sloat denies the allegations of this paragraph.**

98.     Without authorization from or the knowledge of Tricoci, Sloat intentionally provided services and assistance to Fekkai, Bastide, and/or Blue Mistral while she was still

employed by Tricoci, in direct violation of her fiduciary duties, the Sloat Agreement, and Tricoci's policies.

**ANSWER:    Sloat denies the allegations of this paragraph.**

99.    Sloat's actions were for her benefit and at the expense of Tricoci. Her actions hindered Tricoci's ability to continue the business for which Sloat was hired to build, including the product launch and rebrand retail strategy.

**ANSWER:    Sloat denies the allegations of this paragraph.**

100.    Sloat's breach of the duty of loyalty has caused Tricoci damages in an amount to be determined at trial, including but not limited to, lost revenues resulting from Sloat failing to perform her job duties for Tricoci and instead devoting her working time to performing services for competitors of Tricoci, as well as forfeiture of Sloat's compensation during the period of breach.

**ANSWER:    Sloat denies the allegations of this paragraph.**

101.    Sloat was in breach of her fiduciary duties to Tricoci since at least September 2020 through October 2020 and during that time period received compensation from Tricoci, which she must disgorge and repay to Tricoci.

**ANSWER:    Sloat denies the allegations of this paragraph.**

102.    In addition, Sloat is liable for all damages resulting from her breach of fiduciaries duties, including but not limited to Tricoci's lost revenues, in excess of that amount.

**ANSWER:    Sloat denies the allegations of this paragraph.**

103.    The acts by Sloat as described above were willful, malicious and done with an evil intent. As such, Tricoci is entitled to an award of exemplary and punitive damages.

**ANSWER:    Sloat denies the allegations of this paragraph.**

## COUNT VI
(Aiding and Abetting Breach of Duty of Loyalty Against Defendant Claudia Poccia)

104.    Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:    Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

105.    Poccia aided and abetted Sloat in her breach of fiduciary duty to Tricoci by knowingly and substantially assisting and encouraging Sloat's breach of fiduciary duty by making introductions to Fekkai, Bastide, and/or Blue Mistral, recommending Sloat to perform marketing

work for Fekkai, Bastide, and/or Blue Mistral, and facilitating discussions between the parties for purposes of obtaining employment and/or work for Sloat.

**ANSWER:** **As this allegation and this Count VI are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

106.    Poccia's conduct was knowing and willful at the time that she engaged in said conduct, and intended to benefit Defendants and Fekkai, Bastide, and/or Blue Mistral to the detriment of its direct competitor Tricoci.

**ANSWER:** **As this allegation and this Count VI are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks [sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

107.    Poccia's conduct has caused Tricoci damages in an amount to be determined at trial, including lost revenues.

**ANSWER:** **As this allegation and this Count VI are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

108.    The acts by Poccia as described above were willful, malicious and done with an evil intent. As such, Tricoci is entitled to an award of exemplary and punitive damages.

**ANSWER:** **As this allegation and this Count VI are not directed to Sloat, no response is necessary. To the extent a response is necessary, Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

<u>**COUNT VII**</u>
(Civil Conspiracy Against All Defendants)

109.    Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:** **Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

110.    Defendants were aware of their contractual and legal obligations under the Sloat Agreement, Poccia Agreement, and common law

**ANSWER:** **Sloat admits that she was aware of her contractual and legal obligations under the Sloat Agreement. Sloat lacks sufficient information to form a belief as to the truthfulness**

21

**of the remaining allegations contained in this paragraph, and therefore denies the remaining allegations of this paragraph.**

111. Defendants knowingly and willingly conspired and agreed between themselves to breach the Sloat Agreement, Poccia Agreement, and common law duties and obligations. Defendants utilized Tricoci's research and other resources to understand the products market and is subsequently using that on behalf of competitors.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

112. The object Defendants sought to accomplish, and indeed what was accomplished, was to gain an improper competitive advantage for competitors, injure Tricoci's products business, and prevent the successful administration of its retail strategy.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

113. Defendants committed and caused to be committed one or more overt and unlawful acts in furtherance of the conspiracy, including, but not limited to, the procuring of employment and performance of work by Sloat for competitors.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

114. As a direct and proximate result of Defendant's actions, Tricoci has suffered damages in an amount to be determined at trial.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

### COUNT VIII
(Negligent Spoliation Against Defendant Molly Sloat)

115. Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:** **Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

116. Sloat had a duty to preserve the information and evidence on her Tricoci issued devices pursuant to the fiduciary obligations she owes to Tricoci, in addition to Paragraph 2 of the Sloat Agreement, prohibiting Sloat from using Tricoci's confidential and trade secret information for the benefit of a third party and from sharing it with any third parties.

**ANSWER:** **Sloat admits the Sloat Agreement contains certain terms that, if enforceable, speak for themselves. Sloat denies the remaining allegations of this paragraph.**

117. Sloat breached her duty to preserve when she intentionally and maliciously attempted to erase the contents of her laptop and cell phone to prevent Tricoci from uncovering documents she sent to her personal e-mail address, Poccia, and potentially others.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

118.    At the time that Sloat deleted the information, she knew that it was relevant and material to potential litigation because it was in violation of the Sloat Agreement and she had made purposeful efforts to conceal her work for competitors from Tricoci.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

119.    Sloat's spoliation of relevant evidence prohibited Tricoci from being able to prove her illegal conduct and the extent of the resulting damages.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

120.    As a direct and proximate result of Defendant's actions, Tricoci has suffered damages in an amount to be determined at trial.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

**COUNT IX**
(Violation of the Illinois Trade Secrets Act Against All Defendants)

121.    Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:** **Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

122.    In the course of their engagements with Tricoci, Defendants acquired and developed confidential, trade secret, and proprietary information including without limitation, technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, strategic plans, marketing products, and retail plans, while performing work for Tricoci.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

123.    The confidential, trade secret, and proprietary information acquired and developed by Defendants is shared with only a limited number of employees within Tricoci's executive team, is not known outside of Tricoci's business, and constitutes protectable trade secrets.

**ANSWER: Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

124.    Tricoci expended significant sums of money and time to develop its trade secret information, and it would be difficult, expensive and time consuming to be duplicated by others.

23

Tricoci's trade secret information is not generally known by Tricoci's competitors, who would derive great economic value from its use or disclosure.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

125. Tricoci engages in reasonable efforts to maintain secrecy of its trade secret information, including without limitation, through the use of security and encryption tools, and non-disclosure agreements with Tricoci employees.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

126. Pursuant to the Sloat Agreement and Poccia Agreement, Defendants are under a continuing obligation to maintain the secrecy of Tricoci's confidential information and trade secrets.

**ANSWER:** **Sloat admits the Sloat Agreement contains certain terms that, if enforceable, speak for themselves. Sloat denies the remaining allegations of this paragraph.**

127. Tricoci has not consented, either expressly or implicitly, to the disclosure or use of its trade secrets and other confidential information by Defendants.

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

128. Based on information and belief, Tricoci alleges that Defendants have acquired, disclosed, and used Tricoci's confidential information and trade secrets to the detriment of Tricoci in violation of 765 ILCS 1065/1 *et seq.*

**ANSWER:** **Sloat denies the allegations of this paragraph.**

129. Tricoci further alleges that Defendants will inevitably use, disclose, and rely on Tricoci's trade secrets by virtue of having created such trade secrets, having used Tricoci's resources to compile research on competitors and effective strategies, and being privy to all of Tricoci's pricing and retail strategies, thereby allowing Defendants to undercut Tricoci's position when advising Fekkai, its direct competitor, on the same business considerations.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

130. Defendants' misappropriation and use of Tricoci's trade secrets is willful and malicious.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

131.    As a result of Defendants' conduct, Tricoci has suffered irreparable harm and will continue to suffer irreparable harm through the loss of its valuable trade secrets to a direct competitor.

**ANSWER:**    **Sloat denies the allegations of this paragraph.**

132.    Unless enjoined, Defendants will continue to and/or inevitably will use or disclose Tricoci's trade secrets. No amount of money damages will adequately and fully compensate Tricoci for these future losses, and Tricoci's remedies at law are inadequate.

**ANSWER:**    **Sloat denies the allegations of this paragraph.**

## COUNT X
(Violation of the Defend Trade Secrets Act ("DTSA") Against All Defendants)

133.    Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:**    **Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

134.    Tricoci is the owner of valuable trade secrets used in, or intended for use in, interstate or foreign commerce. Those trade secrets include, but are not limited to, detailed compilations of product pricing, history and performance information, market research, marketing, sales, growth strategies, financial records, sales records and documents, long-range plans, and competitive strategies.

**ANSWER:**    **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

135.    This information constitutes "trade secrets" under 18 U.S.C. § 1839(3) because (i) it is sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use; and (ii) Tricoci takes reasonable measures to safeguard the secrecy of the information, as described herein.

**ANSWER:**    **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

136.    On information and belief, by accepting and performing a role overseeing marketing and general strategy work for the products of Fekkai and Fekkai-affiliate companies, Defendants have disclosed or will inevitably disclose and/or have used or will use, Tricoci's trade secrets for the benefit of themselves and/or Fekkai.

**ANSWER:**    **Sloat denies the allegations of this paragraph.**

25

137.    Defendants acquired the trade secrets by improper means, including by sending themselves and retaining Tricoci's trade secret information without permission outside of Tricoci's networks.

**ANSWER:    Sloat denies the allegations of this paragraph.**

138.    Tricoci's trade secrets, as described in the preceding paragraphs, derive independent economic value from the fact that they are not generally known by and are not readily ascertainable through proper means by Tricoci's competitors.

**ANSWER:    Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

139.    Tricoci's trade secrets represent the results of substantial efforts and investment by Tricoci.

**ANSWER:    Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

140.    Tricoci also takes extraordinary measures to maintain the continued secrecy of its trade secret information, including, but not limited to, installing password protection of its electronically-stored information, limiting access to those who need such information, and requiring its employees to execute agreements limiting the disclosure of confidential information.

**ANSWER:    Sloat denies the allegations of this paragraph.**

141.    By using and/or threatening to use Tricoci's trade secrets in its business, the Defendants have misappropriated Tricoci's trade secrets as defined in 18 U.S.C. § 1839(5).

**ANSWER:    Sloat denies the allegations of this paragraph.**

142.    The Defendants' misappropriation and/or threatened misappropriation of Tricoci's trade secrets are willful and malicious.

**ANSWER:    Sloat denies the allegations of this paragraph.**

143.    Under 18 U.S.C. § 1836(b)(3), the Defendants' misappropriation and/or threatened misappropriation of trade secrets may be enjoined by this Court.

**ANSWER:    Sloat admits that 18 U.S.C. § 1836(b)(3) contains certain provisions that speak for themselves. Sloat denies any wrongdoing and denies Plaintiff is entitled to any relief.**

144. Further, Tricoci has incurred actual damages as a result of Defendants' misappropriation of its trade secrets, including but not limited to loss of the economic value of its trade secrets generated by years of efforts and investment on the part of Tricoci, as well as lost profits.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

145. 18 U.S.C. § 1836(b)(3)(B) allows for recovery of both the actual loss caused by misappropriation of trade secrets and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss, or in lieu of damages measured by any other methods, the imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

**ANSWER:** **Sloat admits that 18 U.S.C. § 1836(b)(3)(B) contains certain provisions that speak for themselves. Sloat denies any wrongdoing and denies Plaintiff is entitled to any relief.**

146. 18 U.S.C. § 1836(b)(3)(D) allows for recovery of attorney's fees if a trade secret was willfully and maliciously misappropriated.

**ANSWER:** **Sloat admits that 18 U.S.C. § 1836(b)(3)(D) contains certain provisions that speak for themselves. Sloat denies any wrongdoing and denies Plaintiff is entitled to any relief.**

## COUNT XI
(Violation of the Computer Fraud and Abuse Act ("CFAA") Against Defendant Sloat)

147. Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:** **Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

148. At all relevant times, Tricoci computers were used in or have affected interstate commerce or communication and are protected computers under the CFAA, 18 U.S.C. § 1030(e).

**ANSWER:** **Sloat lacks sufficient information to form a belief as to the truthfulness of the allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

149. Prior to and after the end of her engagement with Tricoci, Sloat intentionally accessed one or more Tricoci computers without authorization and/or in excess of any authorized access and obtained information by accessing, copying, transferring, and/or deleting electronically stored documents and information belong to Tricoci while utilizing Tricoci computers, systems, and e-mail addresses.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

27

150.    By her conduct, Sloat knowingly caused the transmission of information and, as a result, intentionally and/or recklessly caused damage and loss to Tricoci's protected computer.

**ANSWER:**    **Sloat denies the allegations of this paragraph.**

151.    Sloat's actions have caused Tricoci to incur damage in the form of impairment to the integrity or availability of data, a program, a system, and/or information.

**ANSWER:**    **Sloat denies the allegations of this paragraph.**

152.    Sloat's actions have caused Tricoci to incur losses in responding to and investigating Sloat's misconduct that exceed $5,000 in a one-year period, including forensic analysis of their devices after learning that they misappropriated information from Tricoci.

**ANSWER:**    **Sloat denies the allegations of this paragraph.**

153.    As a result of Sloat's wrongful actions, Tricoci was forced to utilize a third-party company to use forensic analysis to investigate and ascertain the extent of Sloat's wrongful accessing, copying, transferring, and/or deleting of information from one or more Tricoci computers.

**ANSWER:**    **Sloat denies that she engaged in wrongful conduct. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

154.    In addition, Tricoci has been forced to expend substantial time and resources, including devoting working time of Tricoci employees, to investigating and responding to Sloat's wrongful conduct, in an amount to be determined at trial.

**ANSWER:**    **Sloat denies that she engaged in wrongful conduct. Sloat lacks sufficient information to form a belief as to the truthfulness of the remaining allegations contained in this paragraph, and therefore denies the factual allegations and legal conclusions of this paragraph.**

## COUNT XII
### (Preliminary and Permanent Injunctions Against All Defendants)

155.    Tricoci realleges and incorporates by reference the paragraphs set forth above.

**ANSWER:**    **Sloat incorporates her answers to paragraphs 1 through 70 above as if fully stated in this response.**

156.    There is a reasonable likelihood that Tricoci will succeed on the claims it has asserted herein.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

157. Tricoci has asserted a clear right of interest that is in immediate need of protection.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

158. Tricoci has an inadequate remedy at law.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

159. Tricoci will suffer continuing irreparable harm if injunctive relief is not granted.

**ANSWER:** **Sloat denies the allegations of this paragraph.**

160. Pursuant to the terms of the Sloat Agreement and Poccia Agreement, Tricoci is entitled to Preliminary and Permanent injunctions prohibiting the following: (a) Defendants from removing, altering, erasing, deleting, and destroying any documents or records or items in their possession, custody, or control, which were created by Tricoci, or Poccia or Sloat during their engagement with Tricoci, and requiring them to return all such documents or records to Tricoci immediately; (b) Defendants from using, disclosing, misappropriating, relying on, copying, or transferring Tricoci's confidential and Trade Secret information until such time as the confidential and Trade Secret information they acquired no longer has value; (c) Defendants from working for Fekkai or any other direct competitor until such time as the confidential and Trade Secret information they acquired no longer has value; (d) Sloat from providing any type of marketing services she performed during her employment with Tricoci for any direct competitor of Tricoci, including Fekkai and any Fekkai-affiliate entities, until such time as the confidential and Trade Secret information they acquired no longer has value; (e) Defendants from directly or indirectly soliciting or inducing or attempting to solicit or induce any employee of Tricoci to leave the employment of Tricoci until such time that Tricoci's confidential and Trade Secret information no longer has value; and (f) Defendants from retaining any and all Tricoci confidential and trade secret information, including, but not limited to, any and all copies or reproductions of any document, communication or tangible item that contains any Tricoci confidential or trade secret information currently in the possession or control of Poccia, Sloat, or anyone authorized to act on their behalf and returning all such information to Tricoci.

**ANSWER:** **Sloat admits that the Sloat Agreement that contains certain terms that speak for themselves. Sloat denies the document contains enforceable provisions as outlined in the above paragraph. Sloat further denies any wrongdoing and denies Tricoci is entitled to any relief.**

## JURY TRIAL DEMAND

161. Tricoci hereby requests a trial by jury on all of its legal claims.

**ANSWER:** **Sloat admits that Tricoci requests a trial by jury on all of its legal claims. Sloat demands trial by jury of all issues in the above causes of action.**

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant, Molly Sloat prays that this Court enter judgment for her and against Plaintiff and enter such further relief as it deems just and appropriate under the circumstances.

## AFFIRMATIVE DEFENSE

As and for her affirmative defense, the Defendant states and asserts as follows:

### First Affirmative Defense
### (Unclean Hands)

1.      Plaintiff's claims are barred, in whole or in party, under principles of equity, including unclean hands because of Plaintiff's false and misleading statements of fact set forth in the Complaint.


Dated: January 29, 2021                          Respectfully submitted

                                                 NIELSEN, ZEHE & ANTAS, P.C.

                                    By:     */s/ Lindsay E. Dansdill*_____
                                            Lindsay E. Dansdill, ARDC #6289316
                                            NIELSEN, ZEHE & ANTAS, P.C.
                                            55 W. Monroe Street, Suite 1800
                                            Chicago, Illinois 60603
                                            ldansdill@nzalaw.com
                                            ***Attorneys for Defendant, Molly Sloat***


## CERTIFICATE OF SERVICE

The undersigned attorney, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing document by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on January 29, 2021.


                                            */s/Lindsay E Dansdill*_____
                                            Lindsay E. Dansdill, Esq.

<u>**VERIFICATION**</u>

I, Molly Sloat, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Answer to Plaintiff's Verified Complaint and know the contents thereof, and that the matters contained in the Answer are true to the best of my knowledge, information and belief.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: January 29, 2021

Molly Sloat
*Claimant*