IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO TRICOCI HAIR SALONS & DAY SPAS, LLC d/b/a Tricoci Salon and Spa, an Illinois corporation AGENCY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLAUDIA POCCIA and MOLLY SLOAT, <br><br> Defendants. | Case No. 20-cv-07196 <br><br> Honorable Matthew F. Kennelly <br><br> Hon. Mag. Gabriel A. Fuentes |

**MARIO TRICOCI HAIR SALONS AND DAY SPAS, LLC'S
MOTION FOR LEAVE TO CONDUCT FURTHER EXPEDITED DISCOVERY**

Plaintiff Mario Tricoci Hair Salons and Day Spas, LLC d/b/a Tricoci Salon and Spa ("Tricoci") by and through its attorneys, and pursuant to Federal Rules of Civil Procedure 26 and 45, hereby moves this Court for leave to issue third-party subpoenas to Fekkai Brands, Blue Mistral, Bastide, and Cornell Capital ("Cornell"), depose Defendants Claudia Poccia ("Poccia") and Molly Sloat ("Sloat"), and conduct further forensic discovery.

**I.      INTRODUCTION**

The forensic inspection has already revealed that Defendants Poccia and Sloat flagrantly disregarded their obligations to provide truthful information to counsel and this Court by making material misrepresentations in verified pleadings and communications, including with respect to the scope of their work for Fekkai, when they were solicited to work for Fekkai, what of Tricoci's they shared with Fekkai, and when they began performing such work. Indeed, contrary to their assurances, Poccia began recruiting Sloat for employment with Fekkai as early as September 2019 and, based on a reasonable reading of the information provided, began doing work for Fekkai in 2019 or early 2020 while still working for Tricoci as President of Hair and Beauty Product, with Sloat following suit in August 2020. Defendants worked for Fekkai while they were engaged and being compensated by Tricoci to create the strategies and implementation of its product rebrand, concealing their disloyalty from Tricoci.

1

Of the 19,584 documents released to Tricoci, Poccia deleted hundreds of e-mails from June – October 2020[1] between Sloat and Poccia and various Fekkai personnel, including Said Dabbagh, Chief Marketing Officer for Fekkai Brands. Sloat sent Tricoci's confidential and non-public information regarding Tricoci's rebrand to her personal accounts just before sending the same information to Poccia, who forwarded it directly to Frederic Fekkai to attempt to secure a position for Sloat. In further effort to conceal their wrongdoing, Sloat failed to disclose a personal e-mail account where she communicated with Fekkai representatives and potentially a personal Dropbox account that she sent Tricoci information to through a shared link. All the while, Fekkai (Frederic and the entity) were aware of Poccia's and Sloat's obligations, chose to disregard them, and failed to ensure Defendants did not breach them or that Fekkai did not induce a breach.

Defendants' misconduct, outlined below, render their assurances regarding Tricoci's confidential and trade secret information and breaches of their agreements incredible. Accordingly, Tricoci respectfully requests that the Court permit Tricoci to: (1) issue third-party subpoenas to Fekkai-affiliate entities (Fekkai Brands, Blue Mistral, Bastide, and Cornell) in part to recover the information that Defendants deleted, hid, or otherwise refuse to produce and to determine whether a Fekkai entity may be an appropriate Defendant in this matter; (2) allow Tricoci to take the depositions of Defendants to determine the scope of their misrepresentations, work for Fekkai, and extent of their spoliation, in addition to the other relevant topics outlined in Tricoci's Motion for Preliminary Injunction; (3) allow Tricoci to review additional documents acquired through the forensic inspection at least since August 2019, the time period that Tricoci has now learned Poccia began soliciting employment from Fekkai for herself and Sloat.; and (4) conduct further discovery on the e-mail address and Dropbox account that Defendant Sloat failed to disclose.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### a. Poccia and Sloat Were to Craft and Carry Forward Its Product Rebrand Strategies.

---

[1] There are over 1000 deleted Poccia documents that were released days ago and for which Tricoci has not yet completed review. Tricoci suspects that there are hundreds more that reference Fekkai.

In 2018, Tricoci formulated a growth strategy involving a comprehensive redevelopment of Tricoci haircare products and the introduction of new lines, including cosmetics and skincare. The rebrand culminated in a highly publicized product launch in August 2020 of the Tricoci Collection.

Tricoci hired Poccia (at a rate of $30,000 per month) to formulate and carry forward the strategy and initiatives of the product rebrand. Tricoci gave Poccia a title, (President of Hair and Beauty Products), and significant responsibility, including product formulation, labeling, design and marketing, with the deliverable of creating and ultimately launching the Tricoci Collection for national distribution. Poccia and Tricoci agreed that Tricoci would utilize her experience and contacts in the industry to create key relationships between Tricoci and national retailers such as ULTA, Blue Mercury, and Sephora, with the goal to sell the Tricoci Collection at such retailers. Tricoci also hired Sloat to work closely with Poccia to manage the marketing functions of the rebrand. From March 2019 to March 2020, Sloat worked with Tricoci's executive team to develop a branding and marketing strategy for the Tricoci Collection, in addition to driving Tricoci's marketing strategy for its salons and other business initiatives. Poccia and Sloat attended regular meetings with the rest of the executive team and discussed plans and strategy regarding the product rebrand and launch of the Tricoci Collection. Poccia and Sloat often presented (including to the Tricoci Board) on the progress of strategies and decisions that the team had to make to move forward with their vision. Tricoci had discussed with Sloat on numerous occasions that she was hired and expected to use her contacts at ULTA to secure a national presence for Tricoci's product lines.

      **b.   Poccia Deleted E-mails with Frederic Fekkai and Fekkai Employees During the Relevant Time Periods.**

Poccia reviewed 33,209 documents, released 15,243 for Tricoci's review, and withheld 17,966 documents based on privilege, all of which hit on the relevant search terms. Of the documents released to Tricoci, 2,286 were deleted by Poccia and, of those, 1,365 mentioned Fekkai. Most were between Poccia and various Fekkai executives during the relevant time periods. The deleted e-mails were forensically recovered, pieced together, and processed as fragmented files. (*See* Ex. A, Affidavit of Andy Spore, Legility Sr. Digital Forensic Examiner ("Spore Aff."), ¶¶ 9-11). The sender, recipient, and time appear, but the subject and e-mail are illegible. By way of example, Poccia deleted a string of e-mails

3

from August 17, 2020 – September 5, 2020 between herself and Dabbagh, Zev Krauss (Senior Director, Head of Digital and Ecommerce for Fekkai Brands for Fekkai Brands), and Pamela Lall (position unknown), with a copy to Joseph Santacroce (Controller for Blue Mistral LLC), Jodi Menell (Head of Human Resources for Fekkai Brands), and Alex Richardson (Chief Technology & Digital Officer for Fekkai Brands). (*See* Ex. A-2, Sample of Poccia's Deleted E-mails). These e-mails were sent around the time Poccia introduced Sloat to members of the Fekkai branding team and Sloat entered a consulting agreement with Fekkai.

### c. Poccia Made Material Misrepresentations to Tricoci and the Court.

Poccia audaciously violated her obligation to provide truthful statements in her verified pleadings by making factual misrepresentations which Tricoci has now learned were false and/or misleading. Significantly, Poccia made statements to the effect that she did not attempt to recruit Sloat on behalf of Fekkai and misrepresented her own engagement with Fekkai. Among others, Poccia made the following material misrepresentations:

**Misrepresentation 1**

Poccia provided the following Verified Answer to Paragraph 44 of the Complaint:

44. Upon information and belief, Poccia had met with the Fekkai team as early as January 2020 while in Los Angeles on business for Tricoci.

ANSWER: Poccia denies the allegations of this paragraph.

Poccia was negotiating with and/or working for Fekkai in January 2020. Correspondence exchanged between Poccia and Justine Cheng, Partner at Cornell,[2] indicate that Poccia met with Fekkai and an individual named Pierre on or about January 10, 2020. (Ex. B, Jan. 19, 2020 E-mail Chain Between Poccia and Cheng). On January 19, 2020, Poccia told Cheng that she planned to meet Frederic Fekkai in Los Angeles for dinner on January 24, during Poccia's trip to attend a conference with her Tricoci team members, at the expense of Tricoci, which she noted on her itinerary. (Ex. C, Jan. 19, 2020 E-mail from Poccia to Alex Flores Attaching Itinerary). Poccia attended Fekkai's Launch Celebratory

---

[2] Cornell Capital is the private equity firm that entered a joint venture with Frederic Fekkai to own and operate Fekkai Brands, Blue Mistral, and Bastide. Each of the three aforementioned companies are different segments of Fekkai's business. It appears based on Cornell's website and these communications that its executives manage and assist in strategy formulation for Fekkai Brands, Bastide, and potentially other Frederic Fekkai-affiliate entities.

Dinner, presumably for the launch of hair care products. (*See* Ex. D, Photograph of Poccia; *see also* *https://bfa.com/events/30830*, Celebratory Dinner Event Photographs, last accessed Mar. 9, 2021). These e-mails, itinerary, and photos directly contradict Poccia's Verified Answer to Paragraph 44, where she denied that meeting Fekkai in January 2020 while in Los Angeles while traveling at Tricoci's expense.

Apart from her meetings in January 2020, the forensic inspection revealed that Poccia, in fact, had begun doing work for Fekkai and/or Fekkai-affiliate entities *as early as September 2019*, in addition to attempting to recruit Sloat on behalf of Fekkai at that time. Sloat sent her resume and work "portfolio" to Poccia on August 27, 2019, as they were formulating Tricoci's rebrand strategy. (Ex. E, Aug. 27, 2019 E-mail from Sloat to Poccia).[3] Attached to her e-mail was a copy of Tricoci's magazine, which had not yet been made public. Tricoci packaged the magazine on September 1, sent it out, and launched the magazine on September 25, 2019. (*See* Ex. F, E-mail Invitation to Launch Party). Also attached to the e-mail was Sloat's resume, which indicated that she had been operating Design Dichotomy, her private company, while working for Tricoci, and that her main responsibilities were consistent with Tricoci's description in this matter.

On September 5, 2019, Poccia spoke with Sloat and Faye Sellers (Investor Relations Associate for Cornell) regarding a dinner with Poccia, Sloat, Sellers, Ann Berry (Sr. Advisor for Cornell), and Joanna Coles (Sr. Advisor for Cornell) on September 18, 2019. (*See* Ex. G, Sept. 18, 2019 E-mail from Poccia to Sloat, Cheng, Berry, and Coles). Presumably, she sent Sloat's resume to these Cornell representatives on or around August 27, 2019, before it went public. Defendants did not produce the e-mail indicating which attachments Poccia forwarded. According to Poccia, the purpose of that dinner with Fekkai was to introduce them to Sloat for consideration for Chief Marketing Officer ("CMO"). (*Id.*). On information and belief, that CMO position was for Fekkai brands – Cornell does not maintain a CMO and Said Dabbagh was hired for the Fekkai Brands CMO position in October 2019. (Ex. H, Said Dabbagh Profile). In September

---

[3] Defendants labeled this and similar communications as confidential. These e-mails do not fall into any category of confidential documents listed in the Agreed Confidentiality Order and are simply an attempt at creating hurdles to presenting the Court with evidence of Defendants' wrongdoing. Tricoci intends to challenge the confidentiality of these and other documents once it completes review of the documents Poccia released earlier this week. In an effort of good faith and to comply with the terms of the Confidentiality Order, Tricoci redacted the substance of the communications for purposes of this Motion.

5

– October 2019, Poccia and Sloat were fully entrenched in Tricoci's rebrand, leading all strategic and marketing initiatives associated with that project, and in the meantime, Poccia solicited one of Tricoci's key executives in charge of the rebrand.

**Misrepresentations 2, 3, 4, and 5**

Poccia provided the following Verified Answer to Paragraph 48 of the Complaint:

48. Around the same time, Poccia introduced Sloat to Fekkai for purposes of securing an engagement for work by Fekkai, while Sloat was still employed by Tricoci and exhibiting a steady decline in her performance.

ANSWER: Poccia admits that, at some point in time, she introduced Sloat to Fekkai via email but denies the remaining allegations of this paragraph.

…

88. Poccia had knowledge of the Sloat Agreement, and encouraged Sloat to provide services for a direct competitor, misappropriate Tricoci's confidential information and trade secrets, and use Tricoci's confidential information and trade secrets on behalf of and for the benefit of a direct competitor.

ANSWER: Poccia denies the allegations of this paragraph.

…

89. Poccia intentionally and without justification took actions which procured, and continue to procure, the breach of Sloat's Agreement with Tricoci.

ANSWER: Poccia denies the allegations of this paragraph.

…

105. Poccia aided and abetted Sloat in her breach of fiduciary duty to Tricoci by knowingly and substantially assisting and encouraging Sloat's breach of fiduciary duty by making introductions to Fekkai, Bastide, and/or Blue Mistral, and facilitating discussions between the parties for purposes of obtaining employment and/or work for Sloat.

ANSWER: Poccia denies the allegations of this paragraph.

Contrary to her denials, Poccia was intimately involved in curating Sloat's departure from Tricoci. In fact, Poccia facilitated Sloat's introduction to Fekkai, in addition to assisting her with internal connections, project placements, and other information related to Fekkai's rebrand. Following Poccia's initial solicitations of Sloat in August – September 2019, and Fekkai's subsequent refusal to hire Sloat for its CMO position, Poccia again pitched Sloat to Cornell and Fekkai in June 2020. On June 9, 2020, while Sloat should have been focused on launching the Tricoci Collection, she again collected and sent Poccia a sampling of her work. (Ex. I, June 9, 2020 E-mail from Sloat to Poccia). Those attachments

include Tricoci's concept for its company rebrand, which was not public until July 29, 2020, in addition to Sloat's updated resume, where she describes her experience at Tricoci as: "Created strategic road map for implementing brand design, creative style guide and campaign position of the new Tricoci brand launching late 2020" and "structured marketing team with responsibility over planning, development and execution of both traditional and digital advertising, social media, e-commerce, graphic design, in-store experience, packaging, and PR." The next day, June 10, Poccia forwarded Sloat's work to Justine Cheng (Partner at Cornell) and Frederic Fekkai, noting that she had been working with Sloat on the Tricoci rebranding and touting that Sloat "knows ULTA inside & out . . . and could definitely get us set up for access @ ULTA on *all brands* in the portfolio." (Ex. J, June 10, 2020 E-mail from Poccia) (emphasis added).

Poccia introduced Cheng to Sloat on July 17, 2020, and then inadvertently forwarded Sloat's materials to Jodi Katz of Base Beauty on July 29, 2020. (Ex. K, July 29, 2020 E-mail from Poccia to Katz).[4] According to a subsequent e-mail, Poccia meant to send the e-mail to Jodi Menell, Head of Human Resources for Fekkai Brands. (Ex. L, July 30, 2020 E-mail from Poccia to Katz). Poccia also sent Tricoci's rebrand information to Said Dabbagh, CMO for Fekkai Brands. (Ex. M, July 29, 2020 E-mail from Poccia to Dabbagh).

In attempting to secure work for Sloat, Poccia sent Tricoci's direct competitor Tricoci's product rebrand information which was not made public for months. On August 19, 2020, Poccia sent an e-mail introducing Sloat to Dabbagh, Krauss, and Lall, with a copy to Joseph Santacroce (Controller for Blue Mistral LLC), Menell, and Frederic Fekkai himself, explaining that Sloat spent time with both Poccia and Frederic to "understand the aesthetic Frederic desires" and that Sloat will "embark on building upon the work previously done by Marion in creating our FEKKAI Brand Book." (Ex. N, August 19, 2020 E-mail from Poccia). This is precisely the work that Sloat and Poccia did for Tricoci, and that Sloat was expected to carry through before Poccia solicited her for employment for Fekkai.

    **III.    Defendant Sloat Made Material Misrepresentations In Correspondence and Verified Pleadings.**

---

[4] Base Beauty is also a competitor of Tricoci's, and Poccia sent its confidential information directly to one of its executives.

Sloat made representations in her communications through counsel and in verified pleadings which Tricoci has now learned were false and/or misleading. On November 2, 2020, in response to having been placed on notice of potential litigation, Sloat's counsel sent an e-mail to Tricoci's counsel outlining Sloat's alleged role at Fekkai and providing assurances that Sloat did not and would not violate the Sloat Agreement. (*See* Ex. O, Nov 2, 2020 E-mail from Lindsay Dansdill to Stephanie Quincy). Tricoci has now learned that the November 2 e-mail was riddled with half-truths and other statements intended to mislead Tricoci. These statements were carried through in Sloat's verified pleadings, in violation of her obligations to provide truthful statements to the Court in testimony and paper filings. Among others,[5] Sloat made the following material misrepresentations in her communications and verified pleadings:

### Misrepresentation 1

In the Nov. 2, 2020 e-mail, Sloat's counsel represented that:

Ms. Sloat began considering alternative consulting positions during the onset of Covid in April 2020. In combination with a reduced salary and a reduction in bonus, she was working 7 days a week with two young children. However, out of respect for the company and her commitment to ongoing projects, she agreed to stay through the launch and publication of the Tricoci rebrand for when it was fully publicized and realized.

In a conversation that occurred between Claudia Poccia and Ms. Sloat in August 2020, Ms. Sloat stated that she was planning to leave MT to begin independent consulting.

Poccia's solicitation and Sloat's eventual departure from Tricoci were entirely unrelated to Covid or any salary reduction. Contrary to Sloat's claim, she met with Poccia and Fekkai representatives in September 2019, and actively sought employment with Fekkai, through Poccia, again in June and July 2020. By August 3, 2020, Sloat and Poccia had discussed her work with Fekkai and Sloat had, while still employed by Tricoci, begun a rebranding package for Fekkai, including to "elevate it with some stunning hair imagery." (*See* Ex. P, August 3, 2020 E-mail between Poccia and Sloat).

### Misrepresentation 2

In the Nov. 2, 2020 e-mail, Sloat's counsel represented that:

---

[5] Many of the responses in Sloat's and Poccia's Verified Answers are false and/or misleading. A complete summary of Sloat's and Poccia's false and/or misleading denials in her Verified Answer would be voluminous and require leave to file an excessively large brief. To the extent the Court would like a summary of each false statement, Tricoci is happy to provide it.

Following that conversation [in August 2020], Ms. Sloat was introduced to Frederic Fekkai to discuss potential work for the Bastide brand consisting of candles, soap and fragrances. She was ultimately asked to review Bastide positioning in September 2020 as a consultant and the work occurred during nights and weekends.

Poccia and Sloat began discussing Sloat's recruitment at Fekkai as early as September 2019, and again in June 2020. In recruiting her, Poccia communicated to Frederic that Sloat would be able to assist with position on "***all brands***" in the Fekkai portfolio, including providing significant assistance in placing Fekkai products in ULTA.

### Misrepresentations 3 and 4

In the Nov. 2, 2020 e-mail, Sloat's counsel represented that:

Documents containing confidential Tricoci information have been deleted from her personal computer and are no longer in her possession.
…
Ms. Sloat has not and will not disseminate or use any Tricoci documents in any way. None of these documents have been shared as Ms. Sloat never intended to distribute them to a third-party. Rather, she was proud of the work she performed and wanted to put the images in her creative portfolio. Many images, such as those of Tricoci bags, gift cards, gift boxes, exterior signs and packaging are already in the public domain.

Sloat's assurances were false. She did share Tricoci's confidential information with Poccia and competitors. Sloat did this in August 2019 when Poccia solicited her for a CMO position at Fekkai, Cornell, or another related entity and again when she sent Poccia her application materials on June 9, 2020, including various project summaries regarding Tricoci's rebrand. (Ex. Q, June 9, 2020 E-mail from Sloat to Poccia, with attachments). At the time, Tricoci's product rebrand had not gone live yet and was not set to do so until August 16, 2020. This information, along with the information that Sloat sent to herself from her Tricoci e-mail address, remain on her personal devices, in addition to whichever documents Sloat may have maintained on her personal Dropbox, as described in further detail below.

### Misrepresentation 5

Sloat provided the following Verified Answer to Paragraph 31 of the Complaint:

31. Sloat had responsibility over all Tricoci marketing functions, including responsibility over Tricoci's product rebrand and the Tricoci Collection, with the ultimate goal of introducing the Tricoci collection to national retailers and becoming a leader in national luxury haircare, skincare, and cosmetic products.

ANSWER: Sloat denies the allegations of this paragraph.

Sloat described her role consistent with Tricoci's description in an e-mail to Deenie Hartzog-Mislock on March 28, 2019, where she stated:

So I just started a new job (I know, I know, I fought full time for a while but gave in) and am now at Mario Tricoci. Google it and you'll understand (Q Amazing Chicagoland salon/beauty/spa and I am leading their entire rebrand- from logo/retail/ marketing/photography/private label/ locations/r+d/ ecommerce and everything in between then plan to grow nationally. Kind of like ULTA was 15 years ago when I got sucked in there.

(Ex. R, Mar. 28, 2019 E-mail from Sloat to Hartzog-Mislock). Sloat's resume sent to Poccia in June 2020 for seeking employment at Fekkai also describes her role as Tricoci in "leading redesign of current brand" and "elevating the brand core value proposition by creating a best in class experience across salon, spa, and retail channels." (Ex. S, Sloat's June 9, 2020 Resume). Sloat's verified pleadings and other documentation contradict her own communications and cast serious doubt on her credibility in discovery and testimonial obligations.

## IV. Sloat Did Not Disclose All of Her E-mail Addresses and Devices.

The parties negotiated and agreed to a forensic inspection protocol (the "Forensic Protocol"), which the Court entered as an Agreed Order on December 24, 2020. [Dkt. No. 25]. The Forensic Protocol mandates that Defendants provide "any necessary passwords to access all information, including Defendants' email and other accounts promptly upon request." Defendants disclosed what they claimed were all of their e-mail addresses and accounts owned that are subject to the Forensic Protocol. [Dkt. No. 25, Ex. A, Subpart 1]. The forensic inspection revealed that Sloat: (1) failed to disclose a personal e-mail address; (2) failed to disclose a personal Dropbox account;[6] and (3) either wiped all data from her Tricoci-issued phone and/or maintained all information on a cloud that Tricoci did not and does not have access to.

First, Sloat failed to disclose her e-mail address mrsbig@me.com, in which her messages with individual members of Fekkai Brands are logged and presumably saved. (Ex. T, Sept. 4, 2020 Text Message with Zev Kraus). Based on Tricoci's review, it appears that this e-mail address may be connected with a cloud account that Sloat utilized on

---

[6] Counsel for Sloat indicated that she would follow-up with her client regarding this information and may decide to provide it.

her Tricoci-issued devices. While Sloat's counsel made mention of a shared e-mail address with Sloat's husband (mrsandmrbig@gmail.com), she made no mention of Sloat's other personal e-mail address.

Second, on October 16, 2020, Sloat's last day at Tricoci, she created a shared link from her home in her Tricoci Dropbox account and sent it to another account. (*See* Ex. A, Spore Aff., ¶ 4; Ex. A-1, Sloat Dropbox Activity from Sloat's Tricoci-Issued Phone). She thereafter deleted the Dropbox application on her devices, along with the trail depicting what Tricoci information she sent herself. (*Id.* at ¶¶ 4-7 ). The documents on the shared link included "2020 Budget," which Tricoci believes is a summary of its budget for all products, rebrands, and other strategic initiatives. (*Id.* at ¶ 8 ).

Third, the forensic inspection revealed that there was hardly any information on Sloat's Tricoci-issued cell phone. This means that Sloat either wiped all information from the phone before turning it in, or that she chose to maintain all of the information on her Tricoci-issued device on a personal cloud and it disappeared from the phone once she signed out of that cloud account. Sloat did not have permission to wipe all information on her Tricoci-issued phone or to save Tricoci information on a personal cloud, in violation of the Sloat Agreement.

**V.      Defendants Refuse to Produce Their Agreements with Fekkai.**

Defendants have withheld all of their agreements with Fekkai on the grounds that they are confidential and/or irrelevant to the issues at hand. In fact, those agreements, just like the agreements between Tricoci and defendants, contain the scope of work and the entities and/or products for which each Defendant was intended to work. Sloat exchanged e-mails with Menel in late August and early September 2020 regarding her consulting agreement. Sloat's agreement with Fekkai, in particular, was entered into September 2, 2020 between herself and Blue Mistral LLC, which is the holding company for Fekkai Brands. The Parties negotiated and jointly entered an Agreed Confidentiality Order to appropriately account for the protection of these types of documents. Throughout those negotiations, Defendants added third-party protections and made no mentions of their concerns in producing their agreements or any other Fekkai information.

**VI.      Fekkai Was Aware of Sloat's Agreement with Tricoci and Potentially Encouraged Her Breach.**

11

Based on information revealed through forensic inspection, Sloat disclosed her obligations to Tricoci to Menell, who claimed to have already been informed by Poccia and indicated to Sloat that it was not a problem.[7] Sloat disclosed that her current engagement implicated that provision, specifically that she was "finishing up another project and I do need some time to notify them, finish up some work I was doing and help them transition through my exit." She went on to state that "Claudia is aware, and she and I just talked and discussed including that for now knowing that is only temporary." In response, Menell confirmed that she was "ok with that" and that "Claudia mentioned the transition." (*Id.*).

In addition to this, Dabbagh e-mailed Sloat and various others on October 14, 2020 regarding an update to Fekkai's founder page, specifically seeking Molly's input and ability to replicate a Tricoci website outlining the same content:

> Looking at the following site – inspired if we can find a selection of b/w images of Frederic during his hey day along with a few products as well in order to curate a collage. https://www.tricoci.com/pages/our-story
>
> Molly I also love how this page talks about the past (Iconic style/constant evolution) + the next generation. ***Something to keep in mind when we need to populate the page in the new site.***

(Ex. U, Oct.14, 2020 E-mail from Dabbagh). Sloat created Tricoci's website, including the page that Dabbagh sent her, and still worked at Tricoci at the time that she was working on Fekkai's website. This is the same rebranding information that Sloat initially had Poccia send to Dabbagh, Frederic Fekkai and others to secure employment at Fekkai. Dabbagh, whose title indicates he is Fekkai's highest-ranking marketing executive, appears to be asking Sloat to mimic the Tricoci website redesign work for Fekkai's new website. Sloat has not produced her response to Krauss's e-mail.

Fekkai acted with utter disregard for Tricoci's protected interests. Frederic Fekkai became aware of the potential for litigation on October 23, 2020 when he had a call with Poccia and Sloat to discuss the letter correspondence that Sloat received from Tricoci.[8] He was also personally made aware of the dispute by Larry Silvestri, Tricoci's Chief Operating

---

[7] Sloat labeled these e-mails and the agreements with Fekkai as confidential, despite the fact that they do not contain any information defined as confidential in the Confidentiality Order. Tricoci intends to confer with Sloat and attempt to resolve these incorrect classifications.

[8] Sloat labeled these text messages as confidential, despite the fact that they contain no personal information, trade secrets, or other protectable information.

Officer, in October 2020. By October 30, Fekkai's General Counsel was involved. It appears that Fekkai made no effort to ensure that it did not assist or encourage Poccia and Sloat's continued breaches of their agreements with Tricoci.

### VII. Tricoci's Attempts to Meet and Confer Have Been Unsuccessful.

At the last Status Hearing, the parties were ordered to produce the remainder of the documents on a rolling basis, to be completed by March 12, and produce a privilege log of the documents Defendants would withhold by March 15, 2020. Sloat released the majority of her documents on March 1, 2021, but did not produce a privilege log. Instead, on March 5, 2021, and in stark contrast to their previous position, Defendants' counsel requested that the parties meet and confer the following week *before* Defendants produce their privilege log. At that point, Poccia had not released any additional documents since the last Status Hearing and neither Defendant had provided further specificity of the documents being withheld, other than commentary by Defendants that the documents include "Fekkai proprietary information such as branding guidelines, strategy, and emails and information regarding new product lines" and "third-party information unrelated to this matter." (Ex. V, Mar. 9, 2021 E-mail Chain Between Counsel).

The parties conferred on March 11, 2020 to discuss the broad categories of documents that Defendants identified they would withhold. Defendants indicated that they would not produce any tax information, agreements with Fekkai, or information and e-mails between Fekkai and Defendants both before and after they began working for Fekkai. They also refused to entertain Tricoci's request to run a limited set of search terms across the existing documents collected for the period in 2019 that Poccia began soliciting Sloat for employment. The correspondence summarizing this discussion is attached hereto as Exhibit W.

### VIII. LEGAL STANDARD

Courts apply a "good cause" standard in determining whether to allow expedited discovery (given that this action was filed in early December, this is hardly "expedited"). The Advisory Committee Note expressly note that expedited discovery may be appropriate in cases "involving requests for a preliminary injunction." *Zambezia Film Pty, Ltd. v. Does 1-65*, No. 13 C 1321, 2013 WL 4600385, at *2 (N.D. Ill. Aug. 29, 2013). "In deciding a motion

13

for expedited discovery, the Court evaluates 'the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Id.* (citing *Hard Drive Prods., Inc. v. Doe,* 283 F.R.D. 409, 410 (N.D. Ill. 2012)).

## IX. ARGUMENT

### a. Subpoenas and a Litigation Hold to Fekkai Entities Are Warranted.

Based on Defendants' conduct in deleting highly relevant information to Tricoci's claims, Tricoci should be permitted to send a subpoena to Fekkai and its affiliate organizations to obtain those documents, in addition to more truthful information regarding the scope of Defendants' engagement with Fekkai, including their agreements outlining same. *See Wright Med. Tech., Inc. v. Orthopedic Sys., Inc.,* No. 06-CV-931, 2007 WL 9760389, at *6 (E.D. Wis. Mar. 28, 2007) (denying request to quash subpoena to defendants' non-party new employer where the claims involved breach of noncompete agreements and unfair competition, and the new employer was the only source of the information).

Not only did Defendants delete highly relevant information, including communications with Fekkai representatives such as its CMO, but they also misrepresented the scope of their engagements with Fekkai through communications and in verified pleadings. Poccia plainly lied about her recruitment of Sloat, denying that she had facilitated any introductions or curated her departure from Tricoci. In fact, she was the mastermind behind their conspiracy, having begun her conduct in September 2019 and continuing through August 2020 when she finally secured a position for Sloat with Fekkai Brands after both had repeatedly sent Tricoci's confidential materials to Fekkai.

Based on the documents produced, it appears that Fekkai had knowledge of Tricoci's agreements with Sloat and Poccia, specifically their post-employment and engagement obligations. Even knowing that information, Fekkai did not put appropriate measures in place to ensure that Defendants did not breach their agreements and that Fekkai representatives did not induce or otherwise participate in those breaches. As much is apparent by Dabbagh's October 14 e-mail directing Sloat to copy a Tricoci website for Fekkai's page. This conduct warrants service of the subpoena attached hereto as Exhibit X to Fekkai, Cornell, Blue Mistral, and Bastide to obtain the documents and information that Defendants deleted and to ascertain Fekkai's efforts in inducing breach of Defendants' agreements with Tricoci. Tricoci also requests permission to send a litigation preservation notice, which is attached hereto as Exhibit Y.

14

### b. Tricoci Should Be Permitted to Take Defendants' Depositions.

Defendants' credibility has been called into question by the fact that they deleted relevant information, made misrepresentations to counsel and in pleadings, and did not disclose all relevant sources of information. Significantly, the e-mails that Defendants deleted are communications between themselves and representatives of Fekkai during August and September 2020. Sloat was working for Fekkai while actively employed by Tricoci and working on Tricoci's product rebrand launch in August, and Poccia was also actively breaching her Agreement with Tricoci by soliciting Sloat. Not only did Defendants make material misrepresentations regarding their recruitment and engagement by Fekkai, but they engaged in purposeful and nefarious efforts to conceal inculpatory communications which prove Tricoci's claims. Furthermore, the way in which Defendants deleted the files renders it impossible to determine when they were deleted but through Defendants' testimony. In light of this, deposition of each Defendant is appropriate under the circumstances. Defendants' conduct in deleting those e-mails potentially gives rise to additional claims against them, including a negligent spoliation claim against Poccia. Further, Tricoci has demonstrated more than a sufficient factual basis to proceed.

### c. The Temporal Parameters for Documents Released to Tricoci from Defendants Pursuant to the Forensic Protocol Should Be Expanded.

Based on the representations of Defendants, and in an effort to alleviate the burden of discovery, Tricoci agreed to limit certain search terms utilized in the forensic analysis to documents dated after January 1, 2020 in some instances and after March 1, 2020 in others. In light of learning that Poccia began soliciting Sloat for outside employment in 2019, and Sloat disseminated Tricoci's website information before it had gone public in on September 25, 2019, Tricoci should be permitted to run a limited set of search terms for the time period March 2019 to December 2019. The search terms that Tricoci would like to run are: (1) Fekkai; (2) Frederic; (3) Bastide; (4) Blue Mistral; (5) Design Dichotomy; (6) ULTA; (7) Resume; (8) CV; (9) MT; (10) @cornellcapllc.com; (11) Cornell; (12) Ann Berry (and/or); (13) Joanna Coles (and/or); (14) Faye Sellers (and/or). No further collection is necessary to run these search terms. The current vendor would simply have to run a search against the existing database and this information is highly pertinent to Tricoci's damages, particularly damages.

Dated: March 12, 2021            Respectfully Submitted,

                                          **MARIO TRICOCI HAIR SALONS AND DAY SPAS, LLC d/b/a TRICOCI SALON AND SPA**

                                        By: */s/ Laura Luisi*

                                            **Michael D. Karpeles**
                                            karpelesm@gtlaw.com
                                            **Laura Luisi**
                                            luisil@gtlaw.com
                                            Greenberg Traurig, LLP
                                            77 W. Wacker Drive, Suite 3100
                                            Chicago, IL 60601
                                            Tel: (312) 456-8400
                                            Firm I.D. No. 36511

                                            **Stephanie J. Quincy**
                                            quincys@gtlaw.com
                                            Greenberg Traurig, LLP
                                            2375 E. Camelback Rd. Suite 700
                                            Phoenix, AZ 85016
                                            Tel: (602) 445 – 8506

                                            *Attorneys for Mario Tricoci Hair Salons and Day Spas, LLC d/b/a Tricoci Salon and Spa*

## CERTIFICATE OF SERVICE

I, Laura Luisi, certify that, on March 12, 2021, I served the foregoing **TRICOCI'S MOTION FOR LEAVE TO CONDUCT DISCOVERY** on all counsel of record via the Court's ECF system.

*/s/ Laura Luisi*

One of Plaintiff's Attorneys