# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIO TRICOCI HAIR SALONS & DAY SPAS, LLC d/b/a Tricoci Salon and Spa, an Illinois corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CLAUDIA POCCIA and MOLLY SLOAT,<br><br>    Defendants. | Case No. 20-cv-07196<br><br>Honorable Judge Matthew F. Kennelly<br><br>Honorable Magistrate Judge Gabriel A. Fuentes |

## DEFENDANT CLAUDIA POCCIA'S SECOND BRIEF IN OPPOSITION TO TRICOCI'S AMENDED MOTION FOR PRELIMINARY INJUNCTION

I. **SUMMARY OF THE CASE**

This case is about a company whose revenues derive almost exclusively from its Illinois salon business, who contracted with a senior beauty industry executive for 13 months to help formulate products it sought to sell and market (released one year ago) and, in the absence of an enforceable non-compete clause, now strains under the guise of trade secret laws to prevent that executive from, at a minimum, continuing in a job she has been in for over a year.[1]

Tricoci filed this "**fire**, ready, **aim**" action seven months ago. Rather than citing competent evidence of trade secret misappropriation or threatened misappropriation and side-stepping several dispositive facts along the way, Tricoci relies on generalized descriptions of what trade secrets are at issue and red herrings to request an unprecedented expansion of the ITSA and DTSA. Even if Tricoci had established a basis for inevitable disclosure or disclosure of trade secrets, which it has not, that would not give Tricoci an automatic right to a non-compete. Courts have rarely — on a handful of inapposite occasions — found it appropriate to issue a short injunction pausing initial employment after the plaintiff showed it would be virtually impossible for the employee to join the new company without relying on the "particularized" trade secrets at issue. Those rare and highly exceptional cases have no application here.

Tricoci unilaterally terminated Ms. Poccia's Consulting Agreement and stopped paying her in March 2020 in clear breach of their agreement. Tricoci knew Ms. Poccia had Tricoci documents and information at all relevant times; how else would she have done her work using her personal devices and e-mail account, which Tricoci knew Ms. Poccia used? Ignoring that Ms. Poccia has offered multiple times to delete any Tricoci information she has (and has only preserved it because

---

[1] As counsel has emphasized, Ms. Poccia has no issue with and agrees to Parts A, B, C, and E of Tricoci's revised Proposed Order (ECF No. 117, PageID # 4999) set forth in response to Ms. Poccia's Motion for Entry of Preliminary Injunction (ECF No. 113.) The only issue before the Court is Tricoci's non-compete demands set forth in Part D of Tricoci's revised Proposed Order. Ms. Poccia therefore focuses her argument on Part D, but reserves all rights.

1

she is legally obligated to do so), Tricoci argues Ms. Poccia will inevitably disclose Tricoci documents (or information in those documents) while working with Fekkai. Alternatively, Tricoci claims Ms. Poccia has already disclosed trade secrets to Fekkai or others and that warrants the extreme injunctive relief it now seeks. Fact, law, and logic compel rejecting Tricoci's overreaching non-compete injunction request.

*First*, Ms. Poccia's possession of the Tricoci information on her laptop or other devices (which she has offered to remediate multiple times) was not and is not improper. Tricoci and its CEO Chris Santiago knew that Ms. Poccia performed all of her Tricoci work on her personal laptop, used her personal phone, and sent and received e-mails and documents using her personal Gmail account. Tricoci kept Ms. Poccia's corporate e-mail account available for *seven months* after it stopped paying her and *four months* after Ms. Poccia told CEO Santiago she would be pursuing a business opportunity with Cornell Capital, who advertises its investment in Fekkai on its website. Ms. Poccia's Consulting Agreement required return of Tricoci information only at the Company's request. CEO Santiago admitted never asking Ms. Poccia to return any Tricoci information or to stop using her personal accounts or devices while she was consulting for Tricoci.

*Second*, the nature of the information itself vitiates any basis for keeping Ms. Poccia from a job she has been in since June 2020. Tricoci has cited no trade secrets in Ms. Poccia's "head" that she might inevitably disclose (because none exist), and has instead relied only on documents it claims Ms. Poccia has on her devices that she might send to Fekkai representatives or some unspecified "competitor." But the information on Ms. Poccia's devices was not improperly acquired, is stale, and has no present value. At deposition, Tricoci's own CEO could not specify what information he thinks Ms. Poccia will disclose. That is because, at best, this information is (a) ideas and recommendations on marketing a product line that was released one year ago and has

2

already been marketed (with all ingredients, formulas, and pricing publicly disclosed); and (b) outdated financial information for a salon company neither Ms. Poccia nor Fekkai would have any logical interest in.

*Third*, Tricoci previously cited five documents (out of 17,000 produced) to argue Ms. Poccia has already disclosed trade secrets and this justifies its incredible non-compete request. But as already briefed, none of those documents evidence disclosure or improper use of trade secrets. Tellingly, Tricoci's Reply now only highlights one of the original five (the "MT Deck"). And the lone centerpiece of Tricoci's inevitable disclosure theory (the "False SantaCroce-Poccia E-mail") is an objectively false document which it understandably has not cited since filing its amended preliminary injunction motion.² The other "evidence" Tricoci cited, dubbed the "Segmentation Branding Report," is a school report on toothpaste drafted by an intern, which Tricoci again has made no reference to since its opening brief. Tricoci's new reliance on two other documents — neither of which contain trade secrets whatsoever — evidences its desperation.

*Fourth*, Tricoci apparently believes that if it can show Tricoci and Fekkai are "competitors" it can achieve the unprecedented non-compete result it seeks. That, of course, is not the law. And the numbers (provided by its CEO) put this spurious argument to bed. Between 85 and 90 percent

---

² Tricoci's half-hearted effort to explain away the False SantaCroce-Poccia E-mail (*see* ECF No. 122) underscores Tricoci's bad faith basis for relying on it in *sole support* of its inevitable disclosure theory. First, Tricoci's supplemental Andy Spore Declaration (*Id.*, PDF p. 132) shows that Tricoci did not investigate this document despite its obvious peculiarities until 12 days *after* it filed it with this Court and presented it as evidence warranting application of the inevitable disclosure theory (Supp. Spore Decl. ¶¶ 3; 6.) *Second*, when Tricoci did ask Andy Spore about it *after submitting it to the Court as evidence*, Spore advised Tricoci that it was not uncommon for there to be file carving errors in such documents and that there was only "a possibility" that the document was real (*Id.* ¶ 8.) Tricoci apparently made no other efforts to confirm its genuineness. Testimony from Ms. Poccia, Joseph SantaCroce, and presentation to this Court of the *real* documents (which show SantaCroce and Ms. Poccia exchanging Fekkai information, *see* ECF No. 98-4, PageID # 4839-48) further underscores that the evidence Tricoci submitted is not real and was at best misrepresented. Ms. Poccia reserves all rights regarding, at a minimum, Tricoci's apparent failure to conduct even a cursory investigation into the document it has relied upon to support the only issue now left before the Court, despite obvious signs it does not exist.

of Tricoci's revenues come from salon services and have for the last three years. Nearly all of Fekkai's come from selling its own products. The two companies fish in different ponds.

The Court should reject Tricoci's baseless injunction request in full.

## II. SUPPLEMENTAL FACTS[3]

### A. Ms. Poccia's Mere Possession of Tricoci Documents Violates Neither Her Consulting Agreement nor the Trade Secret Laws.

Tricoci and CEO Santiago knew that Ms. Poccia sent and received Tricoci documents using her personal devices from the start of Ms. Poccia's contractual relationship with Tricoci through its conclusion. (Santiago Tr. 153 ("Q: you knew at all times when she was performing her duties and sending e-mails and documents back and forth that she was using her personal laptop, correct? A. Correct.").) As mentioned in Ms. Poccia's prior briefing (ECF No. 94), Tricoci plainly failed to take steps to protect the purported secrecy of this information, nor was Tricoci apparently concerned about it at any relevant time. Tricoci also knew at all relevant times that Ms. Poccia used her personal Gmail account to send communications, documents, and information relating to her work for Tricoci. Tricoci never told Ms. Poccia that she could not do so. (*Id.* at 73 ("Q. Did you tell her that she should not communicate through her personal g-mail at all? A. No.").) Nor did any contractual terms preclude such actions. (*See also* Supp. Poccia Decl. ¶ 4.)

In June 2020—three months after Tricoci terminated her Agreement and stopped paying her—Ms. Poccia told Tricoci she was pursuing a business idea called "Ideavation" with Cornell Capital, which Tricoci CEO Santiago called a "great opportunity." (*See* Poccia Decl., ECF No. 94-1, Ex. E.) Cornell Capital advertises publicly on its website that it is an investor in Fekkai.[4] A

---

[3] Ms. Poccia incorporates by reference all facts set forth in her opposition to Tricoci's amended motion for preliminary injunction (ECF No. 94.) Her prior declaration testimony (ECF No. 94-1, PageID# 4671-83) is consistent with the additional discovery taken since that briefing. Ms. Poccia also provides a short supplemental declaration.
[4] https://cornellcapllc.com/investments/

simple Google search reveals press releases from 2018 showing Cornell's Fekkai investments.[5] Tricoci nevertheless kept Ms. Poccia's Tricoci e-mail account open and accessible through October 2020. (*Id.* at 153 ("Q: And Ms. Poccia had access to her Tricoci e-mail until October of 2020, correct? A. That's correct.").) Even after Tricoci stopped paying Ms. Poccia but continued communicating with her, they shared Tricoci information at Ms. Poccia's Gmail. (Supp Decl. ¶ 4.)

Ms. Poccia's Consulting Agreement[6] required return of Tricoci "Confidential Information" only at the request of Tricoci. After Tricoci made a request under the Agreement, Ms. Poccia was required to return the purported Confidential Information within 5 days or, if the termination date fell before the expiration of those five days, by the termination date. (*See* Poccia Decl., Ex. A, ECF No. 94-2; ¶ 9(b).) CEO Santiago admitted he/Tricoci never requested that Ms. Poccia return any Tricoci information at any point. (Santiago Tr. 162 ("Q. Okay. When did you ask Ms. Poccia to return her Tricoci information? A. What do you mean "return her information"? Q. When did you say, "Ms. Poccia, you should return Tricoci's information"? . . . . A. I don't need to ask her to return it.").)

### B. Tricoci's Vague References to "Trade Secrets" Underscores the Objective Speciousness of its Non-Compete Demands.

When pressed to finally identify what trade secrets Ms. Poccia allegedly used or disclosed, Tricoci admits that it has no evidence other than pure speculation and conjecture. CEO Santiago testified that he had "no idea" what documents have been or could be used by Ms. Poccia, and that he is relying on his unsupported and patently contrived personal conclusion that he "has every reason to believe there is [sic] additional documents" Ms. Poccia might have or use, that he is

---

[5] https://www.prnewswire.com/news-releases/frederic-fekkai-acquires-frederic-fekkai-brands-300746982.html; https://mergr.com/cornell-capital-acquires-blue-mistral.

[6] Tricoci's Consulting Agreement is not enforceable for reasons already stated. (ECF No. 94 pp., 8-10.) Her non-compete provision is also unenforceable because it is undisputed, she received no independent consideration for that provision.

5

"absolutely concerned" about what information Ms. Poccia has or "potentially shared," and that he believes he does not have evidence of actual or potential wrongdoing because Ms. Poccia is hiding it.[7] (Santiago Tr. 127; 173.) What is not in Tricoci's or CEO Santiago's deposition testimony on this point are direct answers.

Tricoci's briefing is also tellingly scattershot. At various times, Tricoci references (a) Tricoci Collection pricing; (b) Tricoci Collection product formulations and ingredients; (c) unspecified "strategies"; and (d) Tricoci financial information. Tricoci's hiding behind vague trade secret lingo is understandable when one looks at the substance:

- **Tricoci Collection information and pricing is publicly known.** All of Tricoci's product information is objectively of public record. CEO Santiago admitted that Tricoci's website discloses all Tricoci Collection product pricing, ingredients, and formulas on its website. Indeed, Santiago Deposition Exhibit 6 reveals Tricoci divulging all retail pricing information on all of its products, along with all ingredients. (Santiago Tr. 134, *see also* Santiago Dep. Ex. 6.)

- **No "strategies" have been disclosed or are at risk of disclosure.** Tricoci also vaguely relies on disclosure of its product "strategies." If Tricoci is referring to the "MT Deck" discussed exhaustively in prior briefing, Ms. Poccia reiterates that this document cites and relies entirely on public information and is 28 months old involving a product line released one year ago. (ECF No. 94-1, ¶ 29.) The remaining slides in this document contain general recommendations and ideas on how to market products and what Tricoci should think about regarding *how* to market these products; it contains no concrete ideas, no secret plans, and nothing that is not a logical consideration for any business releasing a new product line *which has already been released*. Even Tricoci's CEO admitted this sort of information is objectively not "confidential." (Santiago Tr. 115.) In any event, the Tricoci Collection product line has been widely marketed on social media since July 2019.[8]

---

[7] Tricoci's continued insistence that Ms. Poccia has intentionally withheld documents is tiresome, false, untrue, and made in bad faith. Tricoci demanded and drafted at the start of this case an ESI protocol that required Ms. Poccia to comb through all of her personal devices and email accounts using search terms such as "Twitter," "Facebook," "Google," and "Distribution." Ms. Poccia, through prior counsel, reviewed over 33,000 documents/emails containing hits on those search terms. No document requests were pending that could be used as a guide for determining relevancy or responsiveness. And Ms. Poccia had only an initial, unamended complaint and an initial preliminary injunction motion that had few specific allegations or details. Ms. Poccia has produced over 17,000 documents, the defendants collectively have produced over 20,000, and Ms. Poccia produced *all* documents with the search term hits for "competitor," "Tricoci," and "Mario." Tricoci's continued allegations of concealment are cover for its insufficient evidence and shoddy pre-suit and pre-motion investigations.

[8] *See* Long Decl. Ex. 2; *see also, e.g.*, https://twitter.com/mariotricoci/status/1295403305754124293?s=20; https://www.tricoci.com/pages/tricoci-collection

- **Stale financial information has not been disclosed and is not threatened.** Tricoci also suggests that because Ms. Poccia likely has Tricoci financial information on her laptop still — which Tricoci knew she had, as she worked on her personal devices throughout her 13-month tenure — Ms. Poccia could "inevitably" disclose it. But why? What of this information would Ms. Poccia need to use in her job with Fekkai? At best, this information is from March 2020 and Tricoci has not explained how or why any value could be derived from knowing how an Illinois-based salon whose revenues are from a business Fekkai has little involvement in was performing financially, especially not before any Tricoci Collection products were released.

- **Other Misrepresentations.** In its Reply brief, Tricoci stunningly now claims without evidence that Ms. Poccia might have received "trade secrets" or confidential documents from Molly Sloat. Sloat, under oath, denies ever sending Ms. Poccia any confidential Tricoci information and Tricoci has cited no such evidence (because none exists).

Tricoci also now relies on two additional documents. Neither contain trade secrets or confidential information:

- **"Where to Play" Slide (Reply Ex. 14**.) Tricoci cites a PowerPoint template slide Ms. Poccia sent to a Blue Mistral board member by e-mail on February 27, 2020. This is a template PowerPoint slide Ms. Poccia has used in several presentations unrelated to Tricoci, and facially contains no Tricoci confidential information. (*See, e.g.*, Supp. Poccia ¶ 6, Ex. H.)

- **"Mini Pricing E-mail" (Reply Ex. 15.)** Tricoci cites an e-mail in which Ms. Poccia suggests looking back at publicly-available pricing ratios for "mini" and "full-size" bottles of beauty products — something broadly known and understood in the industry (Supp. Poccia Decl. ¶ 7.) The "work" for Tricoci Ms. Poccia references in this e-mail is comparisons to the publicly available pricing for full-size and mini bottles of other beauty products from other companies. These comparisons were generated by review of information on public websites. There are no trade secrets at issue.

Tricoci also suggests Ms. Poccia is liable for trade secret violations because she has pre-existing relationships with Ulta. Professional relationships are not trade secrets.

C. **Tricoci is Neither a Competitor nor Competitive with Fekkai.**

Tricoci may have plans to be a competitor of Fekkai in the broad haircare category. But the testimony of Tricoci and its CEO establish that they clearly are not now:

- Just 10 to 15 percent of Tricoci's revenues derive from *overall* retail product sales (i.e., both Tricoci Collection products *and third-party products* it sells in salons and online).

7

- Eighty-five (85) to ninety (90) percent of Tricoci's revenues come from in-salon services, such as manicures, pedicures, and hair styling.

- Of the 10-15 percent of revenues deriving from retail *product* sales for Tricoci, eighty (80) percent come from purchases made by customers in one of its salons. Tricoci has no salons outside of Illinois.

- This revenue breakdown has remained consistent since both before *and after* Tricoci released the Tricoci Collection.

(Santiago Tr. 38-42, 178.) Fekkai, on the other hand, has just two salons globally and sixty-seven (67) percent of its revenues come from selling its own proprietary products *outside* of its salons, products which Fekkai has sold nationally since 2005. (SantaCroce Tr. 14-15; SantaCroce Decl., ECF No. 94-8, ¶¶ 6-8.) In two PowerPoint slides, Ms. Poccia listed "Fekkai" as a company in the competitive landscape for Tricoci along with several other companies, which Tricoci prominently displays in its Reply, claiming this is an admission by Ms. Poccia that Tricoci is a "competitor." Context is dispositive. Tricoci is not currently in the prestige retail haircare market, but it might plan to be. Ms. Poccia recommended pricing on prestige retail haircare products so Tricoci could achieve where it might plan to go. (Poccia Supp. Decl. ¶ 9.)

Tricoci also asserts Fekkai and Tricoci are competitors because they are both focused on "clean" haircare products. Tricoci again misses the mark. Fekkai released a "clean" collection as part of "The One" product line in or around September 2019, which was "well underway" in product development as of March 2019 (when Ms. Poccia joined Tricoci) and has been sold in Ulta and other distributors since its release. (SantaCroce Tr. 42-43; 73-74.) And in 2017, it had already released and distributed similar products. Fekkai released its most recent line in January 2020. (*Id.*; *see also* Poccia Supp. Decl. ¶ 8.) Tricoci may wish to become a product company, but for now, it does not compete with Fekkai in any articulable way.

      **D.    Tricoci's Preliminary Injunction Request Far Exceeds Any Non-Compete That Could Be Enforced Under Ms. Poccia's Consulting Agreement.**

Crucially, not even the non-compete provision Tricoci placed in its Consulting Agreement with Ms. Poccia is as broad as the unsupported injunction request Tricoci pursues with this briefing. Section 8 of the Agreement bars only "competitive" activity during and for two years after Ms. Poccia's contract termination in the "primary area of any city which the company has either signed a lease to open or is in negotiation to sign a new lease." Tricoci has no salons outside of Illinois and had no lease negotiations for any such locations at any relevant time. (*See* Long Decl. Ex. 1.) Fekkai is headquartered in New York and Ms. Poccia performs her work there or at her home in Connecticut. (Poccia Decl., ECF No. 94-1, ¶ 51.)[9] The injunction request is a blatant and improper attempt to obtain a restriction Tricoci never negotiated.

      **E.    Ms. Poccia Was Not Competing Against Tricoci with Fekkai During Her Consultancy and Did Not Improperly Remove Evidence.**

Ms. Poccia will not use her limited space to again respond to objectively false, disproven, but brazenly repeated misstatements. For now, Ms. Poccia makes the following points:

- **Ms. Poccia did not improperly delete any Tricoci information.** On October 26, 2020, Ms. Poccia spoke with CEO Santiago by phone. (*See* Poccia Decl., ECF No. 94-1, ¶¶ 56-57.) Santiago told Ms. Poccia that there were potential "competitive" issues and asked Ms. Poccia if she still had Tricoci documents on her computer. (*Id.*) Ms. Poccia said she thought she did. Santiago then directed Ms. Poccia to delete any Tricoci documents she had on her devices. (*Id.*; Poccia Decl., ECF No. 94-1, ¶ 57.) Ms. Poccia began deleting Tricoci documents pursuant to this instruction and moved several documents to her "trash bin" on her desktop. On October 30, Ms. Poccia received an e-mail from Tricoci's counsel stating that she "needs to speak" with Ms. Poccia, but with no allegations or instructions (Poccia Supp. Decl. Ex. G.) Ms. Poccia directed Tricoci's counsel to her personal attorney and removed no other information from her devices or in her possession. (*Id.*) Tricoci did not file this lawsuit until December.

---

[9] Indeed, Tricoci's red herring that Ms. Poccia did something wrong by sitting in on a business meeting at Ulta in early March 2020 implicated no non-compete obligations whatsoever (it did not for factual reasons, but there is also no contractual argument); it is undisputed that (a) this meeting took place in Bolingbrook; and (b) Tricoci has no Bolingbrook locations. (Santiago Tr. 101-103; Supp. Poccia Decl. ¶ 11.)

- **Ms. Poccia did not perform services for Fekkai or Bastide until April 2020.** Ms. Poccia refers the Court back to her declaration, at ECF No. 94-1, ¶¶ 36-54. She did discuss her business idea, Ideavation, with Blue Mistral and Cornell Capital in early 2020, because Cornell Capital wanted a shared services model between Ideavation (a non-competitive incubator) and Blue Mistral as a condition of any investment. That did involve discussing aspects of Fekkai's business. She went to an Ulta meeting in Bolingbrook, in early March 2020 because Cornell representatives were in from New York and Ms. Poccia was also in the area. She left after 40 minutes for a Luxie board meeting.[10] Blue Mistral initially offered Ms. Poccia a Board seat in 2019. She turned the offer down because she had signed a contract to work for Tricoci. (Poccia Supp. Decl. FN.1.)

Tricoci's false and continually shifting theories show how far it will reach to support its bad faith request to stop Ms. Poccia from working in a field she has worked in for decades.

### III. <u>ARGUMENT</u>

#### A. Tricoci's Non-Compete Injunction Demand Is Facially Overbroad and Improper.

Tricoci's pending injunction request — set forth in its amended motion—asks this Court to enjoin Ms. Poccia from working for "Fekkai, Fekkai-affiliate entities, or any other direct competitor until such time as Tricoci's confidential and trade secret information [Ms. Poccia] acquired no longer has value." Tricoci recently proposed two alternatives, recognizing the absurdity of an indefinite and global non-compete. But both "alternatives" keep Ms. Poccia from her job. Tricoci's first proposal precludes Ms. Poccia from "directly or indirectly" working on any "hair care product" for Fekkai — a haircare product company — through the end of 2022. The alternative prevents Ms. Poccia from "directly or indirectly" being involved in a relationship with Ulta — one of Fekkai's largest distribution partners for years. Ms. Poccia is a Board member of Fekkai's holding company, Blue Mistral, and as a working Board member is serving as the acting

---

[10] Tricoci says in its Reply brief that "Poccia . . . went beyond graphics and templates in relying on Tricoci's pricing and strategy information to advise Fekkai on its ULTA endeavors and general product strategies." Ms. Poccia has no idea how Tricoci could make that statement in a pleading to a federal court when no evidence of any such thing exists. Ms. Poccia reserves all rights with respect to Tricoci's continued fabrications.

CEO for Fekkai. She has general oversight of Fekkai. She could not perform her duties without taking part in all aspects of the business.

Not a single reported case in the Seventh Circuit has applied a preliminary injunction approaching what Tricoci demands. Indeed, the DTSA states plainly that an injunction must not "[p]revent a person from entering into an employment relationship," and any applied limitations must not be based "merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(i)(II). Under the ITSA, a preliminary injunction must not "prevent workers from pursuing their livelihoods when they leave their current positions." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995). Even in *PepsiCo*—inapposite on these facts but relied upon almost exclusively by Tricoci—the Seventh Circuit affirmed only a six-month preliminary injunction on the defendant's employment with a "fierce" competitor, **before** the defendant had commenced work. *Id.* It is against this backdrop that Ms. Poccia makes her remaining points.

### 1. The Inevitable Disclosure Doctrine Does Not Apply.

Under an inevitable disclosure theory, Tricoci must show that Ms. Poccia "could not operate or function in the new position without relying on the trade secrets" and a "a showing of intent or a high probability" that trade secrets will be inevitably disclosed. *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1070 (N.D. Ill. 2020). This requires "more than just the employer's fear that the employee will use the trade secrets." *Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 734 (N.D. Ill. 2011). Tricoci must also show the parties are staunch competitors and that Ms. Poccia's "new" role is similar to what she did as a contract consultant for Tricoci for 13 months. Even when established, a plaintiff is not given the automatic right to an overbroad remedy; the law does not require a non-compete injunction simply because a plaintiff meets the elements of this theory.

11

*First*, Tricoci has presented no evidence showing that Ms. Poccia cannot operate or function in her 13-month old role with Fekkai without relying on Tricoci's so-called trade secrets. Tricoci has talked in circles about "strategies" and "pricing" Ms. Poccia might possess but provides few specifics and leaves out that this information is at best 15 months old and pertains to products released publicly one year ago, along with all pricing, formulations, and ingredients. Information that "is too old to hold any value loses any protection it would otherwise be entitled to as a trade secret." *PrimeSource Bldg. Prod., Inc. v. Huttig Bldg. Prod., Inc.*, No. 16 CV 11390, 2017 WL 7795125, at *14 (N.D. Ill. Dec. 9, 2017). And to emphasize, the information is not only stale; what little concrete information Tricoci feigns concern over—product information, pricing, and general marketing ideas—is public record. Tricoci also ignores that the information on her computer was not improperly retained,[11] gathered with full knowledge of Tricoci during her tenure with them, and never demanded back by Tricoci at any relevant time. Retention of documents lawfully obtained is not a trade secret violation and cannot give rise to an inevitable disclosure argument. *Croner*, 419 F. Supp. 3d at 1066 (The "failure to return lawfully acquired information does not constitute misappropriation of that information . . . .").

*Second*, Tricoci and Fekkai are not competitors. Tricoci has plans to compete with Fekkai and others in the prestige haircare market—that much is clear. But 67 percent of Fekkai's revenues come from product sales *outside of its salons*. Only 10 to 15 percent of Tricoci's revenues come from product sales *altogether* (including third party products sold by Tricoci), and 80 percent of those come from intrastate, in-salon sales. Tricoci also argues it is a competitor of Fekkai because both have "clean" product lines and sell their own branded products. Tricoci leaves out that Fekkai

---

[11] For this reason and others already discussed, Ms. Poccia maintains and continues arguing that Tricoci has failed to take any steps to maintain the secrecy of any information it claims is "confidential" or trade secret protected. (*See* ECF No. 94, PageID # 4664.)

has been in the industry Tricoci seeks to enter for 17 years and has been sold nationally that whole time. It introduced its "clean" product line in late 2019 and began development well before that. As the Northern District said under similar circumstances in *Triumph Packaging Grp. v. Ward*, 834 F. Supp. 2d 796, 810 (N.D. Ill. 2011) (emphasis added):

> Triumph argues that there is the *potential* for competition between AGI and Triumph in the folding carton industry and that such potential is sufficient to justify a preliminary injunction here. The Court disagrees. While the Court recognizes the future potential for competition between the two entities in the personal care folding carton industry, **the fact that less than a quarter of AGI's business is focused on folding cartons, and the fact that Triumph and AGI historically share only one customer and are predominantly focused on industries other than personal care, necessitates a conclusion that the potential for direct competition between the two entities is minimal, at best.**

This is not a close call. Even if the word "competitors" fits, the level of competition is the inquiry and the numbers show how low that level truly is.

*Third*, Ms. Poccia's position at Fekkai is not similar to her 13-month consultancy for Tricoci. (*See* ECF No. 94-1 ¶ 52.) Ms. Poccia agrees she was expected to oversee products at Tricoci if she formed an employment relationship. But Tricoci terminated the relationship and stopped paying her in March 2020. Her entire focus was on the Tricoci Collection during that time.

Trade secret injunctions are not a "reserve clause for solicitous employers." *Redmond*, 54 F. 3d at 1268, and protection "should not extend beyond the limits needed to protect genuine trade secrets." *American Can Co. v. Mansukhani*, 742 F.2d, 314, 329 (7th Cir. 1984). Tricoci's non-compete demand facially exceeds these mandates and should be rejected.

### 2. Tricoci's Meager "Authority" is Inapposite and of No Moment.

Next, Tricoci tries shoehorning case law having no bearing on these facts. Tricoci in fact has no authority for the extreme remedy it seeks. *PepsiCo* —the only published case that provides anything remotely close to what Tricoci seeks here — fell on entirely different facts and circumstances and granted far narrower *pre-employment* relief. There, Redmond (the defendant)

13

worked as a General Manager of PepsiCo's California's business unit before leaving PepsiCo to work as Vice President of Field Operations for Gatorade at Quaker Oats. In his position, Redmond was directly involved in developing forthcoming business plans and had "extensive and intimate knowledge of [PepsiCo's] strategic goals" for the *coming year* in "sports drinks and new age drinks." *Id.* at 1269. The Seventh Circuit affirmed the district court's holding because on those facts, "unless Redmond possessed an uncanny ability to compartmentalize information, he would necessarily be making decisions about Gatorade and Snapple by relying on his knowledge of [PepsiCo's] trade secrets." *Id.* And it was not "general skills and knowledge acquired during Redmond's tenure" that resulted in a short injunction, but "the particularized plans" in a highly competitive industry that were "developed by [PepsiCo] and disclosed to him while the employer-employee relationship existed, which are unknown to others in the industry and which give the employer an advantage over his competitors." *Id.* Those facts are not these.

Tricoci's new reliance on the plainly inapplicable case *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 864 (N.D. Ill. 2001) says much about Tricoci's inability to justify its facially spurious non-compete request. *Grimes* involved a direct and staunch competitor, highly valuable data with present value (proprietary customer accounting software and proprietary customer data), undisputed evidence of spoliation by both the new employer and the defendant after a lawsuit was initiated (including having an expert remove evidence), a prospective employer that took and used trade secrets from the prior employer, and direct evidence of improper acquisition. And crucially, the *Grimes* Court — which restrained aspects of employment for just two months pending a PI hearing — **was a restrictive covenant case involving an enforceable non-competition provision barring what the employee was doing for a period of three years**. None of the facts in *Grimes* fit those here. Tricoci has no enforceable non-compete provision so it tries using the

14

trade secret laws to manufacture one. Indeed, setting all other non-dispositive issues aside, it is facially illogical that Tricoci would propose a restrictive covenant to protect trade secrets and confidential information and then seek an injunction *far exceeding* the scope of those terms. *See Complete Bus. Sols., Inc. v. Mauro*, 2001 WL 290196 (N.D. Ill. Mar. 16, 2001) (restrictive covenants did not bar solicitations and inevitable disclosure theory inapplicable); *Croner*, 419 F. Supp. 3d at 1059 (same).

### B. Tricoci Cannot Meet Any Other Preliminary Injunction Elements.

As already briefed, Tricoci's non-compete demand meets no other preliminary injunction elements. Tricoci is not likely to succeed on its inevitable disclosure theory for reasons already explained. The "threatened injury" to Tricoci—that Ms. Poccia could conceivably disclose or use years-old information with no true value—demonstrably does not outweigh the relief Tricoci seeks, which at its narrowest, would require that Ms. Poccia be pulled from the executive role she has been in for over a year now. And as set forth above, Tricoci has expressed nothing more than "concern" about what Ms. Poccia properly obtained and retained with Tricoci's full knowledge; Tricoci has not and cannot tie any "damage" to anything relevant. And the public is not served by issuing a restraint on trade in favor of a business whose own non-compete with Ms. Poccia is narrower than what is required through its specious injunction proposal. Nor will Tricoci suffer an "irreparable injury" in the face of multiple offers by Ms. Poccia to remediate the information on her devices, her agreement to a tailored injunction, and Tricoci's understandable inability to explain how outdated and largely public information will cause it "irreparable harm."

### IV. CONCLUSION

Ms. Poccia respectfully asks that the Court deny Tricoci's overbroad and meritless request to bar Ms. Poccia from working in a position she has now been in for over one year.

Dated:  July 12, 2021                          Respectfully Submitted,

/s/ *Colton D. Long*

James M. Witz
Colton D. Long
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
(312) 372-5520
clong@littler.com

Melissa McDonagh
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA 02110
(617) 378-6000
mmcdonagh@littler.com
***Attorneys for Claudia Poccia***

## CERTIFICATE OF SERVICE

I hereby certify that, on July 12, 2021, I caused the foregoing *FINAL BRIEF IN OPPOSITION TO TRICOCI'S AMENDED MOTION FOR PRELIMINARY INJUNCTION* to be filed with the Clerk of the Court using the ECF filing system, which electronically served counsel for all parties of record in the above-captioned action.

                                                  */s/ Colton D. Long*
                                                  One of Defendant Claudia Poccia's Attorneys