**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARIO TRICOCI HAIR SALONS & DAY SPAS, LLC d/b/a Tricoci Salon and Spa, an Illinois corporation, | Case No. 20-cv-07196 |
| Plaintiff, | Honorable Matthew F. Kennelly |
| v. | Hon. Mag. Gabriel A. Fuentes |
| CLAUDIA POCCIA and MOLLY SLOAT, | |
| Defendant. | |

## DEFENDANT MOLLY SLOAT'S RESPONSE TO PLAINTIFF'S CLOSING BRIEF IN SUPPORT OF ITS REQUEST FOR PRELIMINARY INJUNCTION

NOW COMES Defendant, Molly Sloat, by and through her attorneys, Nielsen, Zehe & Antas, P.C., and for her Response to Plaintiff's Closing Brief in Support of its Request for Preliminary Injunction ("Motion"), states as follows:

### I. CLOSING FACTS

Plaintiff attempts to conceal its lack of evidence behind preposterous presumptions, a perplexing recitation of events and a pure misstatement of facts. According to Plaintiff, public information should not be emailed between two colleagues and Molly Sloat should be prohibited from utilizing her talents in any future work. Despite its best effort to muddy the waters, Plaintiff still cannot cite to one instance of dissemination of confidential Tricoci information by Sloat.

**A. Graphic Designers are Often Hired to Assist Employers with Website Design and Product Packaging**

Ms. Sloat's employment agreement with Tricoci did not prohibit her from accepting a job with Frédéric Fekkai. Yet Plaintiff's brief focuses on the alleged similarities between Ms. Sloat's general job duties for Tricoci and Fekkai, namely website design and product labeling. According

1

to Plaintiff, Ms. Sloat should not have agreed to perform work on Fekkai's website in her role as a graphic designer and marketing consultant because she spent some time working on Tricoci's public website. Plaintiff also seemingly finds fault with Ms. Sloat utilizing her public work as inspiration for future work.

Plaintiff brazenly attempts to deceit the Court when it asserts Tricoci asked Ms. Sloat to "replicate" Tricoci's website. Rather, a now former employee of Fekkai who reviewed Tricoci's public website stated, "Molly I also love how this page talks about the past (iconic style/constant evolution) + the next generation. Something to keep in mind when we need to populate the page in the new site." [Dkt. No. 59, Ex. 58]. Plaintiff may not understand the concept of a portfolio or the role of a graphic designer. Typically, a potential employer considers a graphic designer's capabilities and aesthetic, as demonstrated in a portfolio, when determining whether the potential employee is a good fit for the company. Any allegation that a request to utilize skills to "talk about the past" as inspiration to populate a website constitutes dissemination of confidential information is plainly absurd. Strangely, Plaintiff fails to assert how the current Fekkai website is similar to Tricoci's website or how Tricoci will be imminently harmed by Sloat's alleged inspiration.

Plaintiff also takes issue with Sloat assisting Fekkai with its product packaging, another characteristic task for a graphic designer. Plaintiff again fails to articulate how her knowledge of Tricoci information could possibly provide Fekkai with an edge in her assessment of Fekkai's product packaging and labels, particularly when Fekkai's product is sold in retail outlets and Tricoci's is not. This yet another example of how Plaintiff confusingly utilizes a motley of irrelevant facts to support its claims.

As Tricoci points out on multiple occasions, Sloat has significant experience in the beauty industry, having served in the position of creative director for an internationally known retailer for

over a decade. It has always been her responsibility, as it is today, to ensure each beauty brand has a unique identity. Throughout the course of her career, Ms. Sloat has rebranded and promoted thousands of products as evidenced by her portfolio, the very portfolio that Tricoci referenced when it decided to hire her. Sloat's ability to rebrand and differentiate products is what makes her work discernable and desired. Duplication of former work is not a respectable or viable option in the creative world.

### B. Sloat did not Disseminate any Confidential Tricoci Information to Fekkai

Mr. Santiago's consistent degradation of employees, refusal to address systemic racism[1] and unprofessional antics caused Ms. Sloat to consider alternate employment opportunities. Plaintiff's statement that "Sloat sent herself Tricoci's information so that she could pitch it to Fekkai" is patently false and Plaintiff fails to disclose what information was sent and "pitched" to Fekkai. Plaintiff's unsupported statement that "[Poccia] and Sloat became privy to that research and essentially conducted a "trial and error" analysis of marketing strategies, pricing, manufacturers, product development, product viability, and other categories on Tricoci's dime before utilizing it on behalf of Fekkai" is correspondingly untrue and merely incomprehensible dicta. If Sloat disseminated Tricoci information to use for the benefit of Fekkai, Plaintiff should be able to establish how specific documents were used in lieu of unintelligible speculation based on artificial facts.

As set forth on countless occasions, Sloat had no interaction with anyone from Fekkai until August 2020, at which time she sent Fekkai her portfolio which contained information available to the general public. If this is the "Tricoci information" that Sloat "sent herself" to "pitch it to Fekkai," it is unclear why this is relevant to Plaintiff's claim. Tricoci's confidential information

---

[1] Mr. Santiago not only failed to address the issue of systemic racism within the Tricoci organization during 2020, he recently testified that he did not know the definition of the term. [Dkt. 132-10, Ex. 10].

was never sent to Fekkai nor did it have any bearing on her ultimate decision to accept a job offer. Rather, an untenable working environment incited Sloat to leave the company.

**C. Sloat Accounted for Every Tricoci Document Sent to her Personal Email Accounts**

It is indisputable that Sloat sent Tricoci information to her personal email accounts for the purpose of working from home during a global pandemic, to add public information to her existing portfolio and to prepare a transition report to Mr. Santiago prior to her departure. Contrary to Plaintiff's ambiguous explanation of what Sloat "presumably" disseminated for a "purported" purpose, Sloat's sworn testimony methodically provides the reason she forwarded herself each document containing Tricoci information during her 18-month tenure with the company. Not one document was disseminated to or utilized by a third-party. While Plaintiff's charts attempt to provide an explanation of Tricoci information allegedly sent by Sloat, it is worth noting that not one piece of confidential information was sent to or utilized by Defendant Poccia, contrary to Plaintiff's allegation that Poccia "sent Sloat's [unspecified] materials around."

Plaintiff does not deny the fact Sloat forwarded herself information for the benefit of Tricoci this but now, in the final hour, focuses on the fact Sloat did not utilize the company Dropbox account. It is unclear how this distinction without a difference is relevant. At no time was Sloat hiding the fact that she forwarded herself information to work from home as Tricoci personnel was privy to all information sent and received by its employees. Sloat also testified that she sent herself information through the Tricoci server as this was the way she was accustomed to working. (Ex. 1, Sloat deposition at 71-72: Q: I'm just trying to figure out why you would e-mail yourself Tricoci information, create that paper trail, have that information out there in your personal e-mail address, as opposed to accessing it where it was held and on Tricoci's systems? A: Well, obviously I did not see an issue with it. I was performing the work as I am

4

comfortable performing the way I do it. Some people are more comfortable working off a server. Some people are comfortable working off SharePoint. I guess that's just an old habit of mine, and that was the way that I was used to working. Q: So it was just a matter of preference essentially? A: Yes.

Importantly, regardless of how Sloat received the Tricoci information, it has been deleted pursuant to Tricoci's demands and is currently inaccessible to Sloat and any third-party.

## CONCLUSION

Plaintiff creates an interesting fiction based on Sloat's presumed actions. However, its claims fall flat when juxtaposed with the actual facts. Plaintiff's desire to compete with a national distributor of haircare products is not sufficient to enjoin Sloat from performing her current job duties within the Fekkai organization. As such, Plaintiff's Amended Motion for Preliminary Injunction should be denied in its entirety.

Dated: July 16, 2021

Respectfully submitted,

NIELSEN, ZEHE & ANTAS, P.C.

By: */s/ Lindsay E. Dansdill*
Lindsay E. Dansdill, ARDC #6289316
NIELSEN, ZEHE & ANTAS, P.C.
55 W. Monroe Street, Suite 1800
Chicago, Illinois 60603
ldansdill@nzalaw.com
***Attorneys for Defendant, Molly Sloat***

## CERTIFICATE OF SERVICE

The undersigned attorney, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing document by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on July 16, 2021.

*/s/Lindsay E Dansdill*
Lindsay E. Dansdill, Esq.