IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO TRICOCI HAIR SALONS & DAY SPAS, LLC d/b/a Tricoci Salon and Spa, an Illinois corporation, | Case No. 20-cv-07196 |
| Plaintiff, | Honorable Judge Matthew F. Kennelly |
| v. | |
| CLAUDIA POCCIA and MOLLY SLOAT, | Honorable Magistrate Judge Gabriel A. Fuentes |
| Defendants. | |

**DEFENDANT CLAUDIA POCCIA'S REPLY IN OPPOSITION TO TRICOCI'S AMENDED MOTION FOR PRELIMINARY INJUNCTION**

Ms. Poccia will not go down Tricoci's rabbit hole of red herrings. The following facts are dispositive of the only question before the Court: (a) Ms. Poccia shared no "trade secrets" with Fekkai or any other person affiliated with Fekkai and her retention of documents is not misappropriation; (b) at best, Ms. Poccia has on her laptop 15- to 16-month old documents, largely of public record; (c) Ms. Poccia has offered to enter into a remediation protocol multiple times; (d) Tricoci's speculative "harm" is neither irreparable nor plausible; and (e) Fekkai and Tricoci focus on two different business lines and are not competitive.

*First*, Tricoci does not cite evidence of trade secret misappropriation, let alone conduct warranting the non-compete injunction request it seeks against a 35-year beauty executive. It claims Ms. Poccia "copied" its information, but cannot cite evidence for this claim. Ms. Poccia possesses Tricoci information because she worked on Tricoci projects using her personal devices, which Tricoci knew. Ms. Poccia retained documents with no legal obligation to return them and Tricoci neither sought return of such information nor evidently cared that Ms. Poccia had them. And although Tricoci's CEO now claims he protected Tricoci information by terminating Ms. Poccia's Dropbox access in July 2020, that was four months after it stopped paying Ms. Poccia[1] and does not ameliorate Tricoci's key problem: Tricoci (a) knew Ms. Poccia used her personal laptop to access and download documents; (b) sent documents to Ms. Poccia's Gmail account and discussed Tricoci's products while she used her personal laptop at all times; (c) kept her Tricoci e-mail access open through October 2020; and (d) never asked for any information back under the terms of the Consulting Agreement. (ECF No. 133, pp. 4-5.) This segues into a related point:

---

[1] Tricoci's factual shapeshifting is well-illustrated by its newfound insistence that Ms. Poccia "resigned from Tricoci in June 2020." (ECF No. 135, p. 12.) It is undisputed Tricoci paid Ms. Poccia nothing beyond March 2020. Tricoci's prior submissions also contradict this falsehood; its preliminary injunction brief (ECF No. 18) notes that "Tricoci's income from its salons came to a screeching halt," Tricoci consequently "had no choice" but to take a "hard look at its expenditures," and that while Ms. Poccia "finish[ed] up a few projects that need[ed] her direction over the next few months" it "paused her work." Separately, the fact that the "screeching halt" of its salon business caused major economic problems demonstrates that Tricoci is, above all else, a salon and spa, as its own name indicates.

1

Tricoci has claimed throughout these proceedings that Ms. Poccia "spoliated" evidence. It claimed in its June 16 Reply that the inevitable disclosure doctrine should bar Ms. Poccia from her job for this reason. Ms. Poccia did not improperly delete anything, as she has made clear. (*See* ECF No. 133, pp. 9-10.) Through its recent submission, Tricoci now claims the inevitable disclosure doctrine applies because Ms. Poccia *did not delete Tricoci's documents from her laptop*. (*Compare* ECF No. 135, pp. 11-12 ("Defendants still have thousands of Tricoci documents on their devices, despite their repeated assurances throughout these proceedings that they deleted everything") *with* ECF No. 122 p. 12 ("the defendants' spoliation of evidence on their computer supports a negative inference that defendants destroyed evidence of misappropriation."[2]).) Tricoci's incoherent and inconsistent theories derive from its inability to justify its demands and allegations with evidence.

And what documents does Tricoci cite to support its claim that Ms. Poccia should be pulled from her job of 13 months under the trade secret laws? Nothing confidential and certainly nothing competitive. It salaciously alleges Ms. Poccia sent a "rebrand strategy" to Fekkai. Setting aside that any "rebrand strategy" pertains to something executed upon over one year ago, Ms. Poccia shared no such thing. Tricoci relies on a slide Ms. Poccia sent to a Cornell Capital representative in late February 2020. That slide is a PowerPoint template containing no Tricoci information. Ms. Poccia previously addressed this in prior testimony. (*See* Supp. Poccia Decl. ¶ 6, Ex. G.) Tricoci again cites the 28-month old "MT Deck," discussed and explained in prior briefing, which relied on publicly available information and contained broad initial marketing ideas for a product already marketed and released. This is what Tricoci has after receiving all documents containing any part of its name, all documents with the term "competitor," and over 20,000 other documents.

---

[2] Tricoci claims Ms. Poccia made "assurances" she deleted everything on her devices. This is simply untrue. Tricoci wrote the ESI protocol and months ago could have demanded remediation. It didn't. Facing baseless spoliation claims, Ms. Poccia did not disturb remaining files on her computer. (ECF No. 19-6 (communication from Tricoci counsel to Sloat's counsel stating "we trust you have advised your client on her preservation obligations."))

Tricoci also again misstates the law. It cites *Molon* to argue Ms. Poccia's non-existent "copying" of information violated the ITSA and DTSA. (ECF No. 135, p. 14.) The question in *Molon* was whether, on a 12(b)(6) motion, the plaintiff sufficiently alleged a plausible claim for misappropriation based on use of a "memory stick" not commonly used by employees. Here, Ms. Poccia used her personal devices for her work as Tricoci knew and which no agreement prohibited. *See also GCM Partners, LLC v. Hipaaline Ltd.*, 2020 WL 6867207, at *14 (N.D. Ill. Nov. 23, 2020) (retention of documents not misappropriation). Tricoci relies on *PepsiCo* and *Grimes*. As discussed (ECF No. 133) both exemplify the unjustifiable nature of the relief Tricoci presses.

*Second*, Tricoci articulates no irreparable harm. Its tenuous "what-ifs" are precisely the type of "harm" courts routinely reject. Against all fact, documented statements, and under-oath testimony, Tricoci alleges Ms. Poccia should have marketed Tricoci Collection products to Ulta in "spring 2020." (ECF No. 135, p. 13.) Tricoci's own testimony and exhibits show that the Tricoci Collection release and development **_was paused in March 2020_** and it is undisputed **_Tricoci stopped paying Ms. Poccia at this same time_** (*See* Tricoci Br., ECF No. 135, Ex. 18-K, p. 269; *see also infra*, FN.1.) In his March 20, 2020 e-mail to Ms. Poccia, CEO Santiago documents that Tricoci was "Pausing on Product Development," "pausing on Tricoci product lines," that the Tricoci Collection project is "on hold pending relaunch date," and that Tricoci stopped its "consultancy" with Ms. Poccia "beg[inning] March 31st." How was Ms. Poccia to market products Tricoci's own CEO paused? And Tricoci stopped paying Ms. Poccia – was she to do this for free? (*See also* Santiago Tr. 58-61 ("Tricoci collection was not ready for distribution in March 2020".) In any case, this theory involves no trade secrets whatsoever. Beyond this, (a) Santiago admits Tricoci did not approach Ulta until October 2020, after it launched its products, and has not approached Ulta since (Santiago Tr. 142-44); (b) Ulta rejected Tricoci's products as outside the

3

Ulta buying cycle at that time (*id.*); and (c) it is undisputed Tricoci is not in any other national retailers.

Loosely referring to CBD or shea butter products, Tricoci now claims Ms. Poccia "took the market research and strategy that Tricoci paid for and utilized it on behalf of Fekkai to create" a new product line. Tricoci cloaks tenuous supposition as fact. It argues Fekkai released new products in 2020, which must mean Ms. Poccia had a hand in developing shea butter and CBD products at Fekkai, which must therefore mean Ms. Poccia used Tricoci's "trade secrets." To be clear, Fekkai's shea butter products were released years ago and *re-released* in 2021, and both CBD and shea butter products were developed without Ms. Poccia's involvement. (Poccia Decl. ¶¶ 1-4.) Fact and logic also expose this manufactured theory for what it is. Tricoci does not even sell or market its own CBD products. And it has one product with shea butter as an ingredient that it does not publicize. (Santiago Ex. 6, ECF No. 133.) It does, however, market and sell numerous **third-party** CBD and shea butter products (*see* Tricoci website hyperlinks, *infra*.) What "harm" let alone irreparable harm has it suffered when it does not even have products purporting to compete? This allegation begs a second question: are shea butter and CBD products uncommon such that releasing them could circumstantially support use of unspecified "strategies"? Absolutely not. Tricoci's own website illustrates how common and popular such products are (CBD; Shea Butter), as does Ulta's (CBD; Shea Butter). What's more, Tricoci's so-called "harm" is facially quantifiable, not irreparable. And it cites bald speculation based on 16-month old occurrences, not evidence of immediate and unquantifiable harm warranting pulling a seasoned executive from her job of 13 months.

*Third*, having "legendary" European hairstylists as founders, among other red herring comparisons, is not relevant to the inevitable disclosure "competition" inquiry. Tricoci and Fekkai

do not derive revenues from the same sources or focus on the same business lines. The record is clear. (ECF No. 133, pp. 7-8.) And Fekkai's alleged "competitive" products predate Tricoci's by at least a year. (*Id.*) Regardless, "inevitable disclosure" is not license for overbroad relief.

*Fourth*, Tricoci does not seek enforcement of any non-compete provision, but Ms. Poccia reiterates that she received (a) no independent consideration for any of the restrictive covenants in the Consulting Agreement; and (b) no funds through the 30-day notice period mandated by the Agreement. (Santiago Tr. 95; 150-51.[3]) Tricoci now claims independent restrictive covenant consideration exists because Tricoci "promis[ed] that [Ms. Poccia] would move into a CEO role and replace Mr. Santiago." Ethereal plans are not consideration, and Tricoci stopped paying Ms. Poccia after just 13 months. It also claims consideration exists because Ms. Poccia remained a consultant beyond the original contract term. The express month-to-month reversion provision is not independent consideration. Tricoci's Reply (ECF No. 136)[4] acknowledges it does not seek enforcement of the Agreement's non-compete but nevertheless claims the provision could be enforceable because Tricoci sells products in Chicago (at its salon) and so does Fekkai (at Ulta). This textually, legally, and logically belied argument illustrates how far Tricoci will stretch to achieve the unprecedented and unwarranted non-compete relief it baselessly pursues.

---

[3] "Q: So outside of [expense reimbursement], plus the $30,000, no other payments under the terms of the agreement, correct? A. That's correct," and "Q: beyond payments made for services rendered in March of 2020. . . there were no other payments made to her, correct? A: That's correct."

[4] Tricoci states in its Reply (ECF No. 136) that Ms. Poccia gave inconsistent testimony when she clarified that her March 2020 meeting with Ulta occurred in Bolingbrook. Not so. Ms. Poccia testified she had coffee at the Langham Hotel in Chicago to discuss Ideavation. The Ulta meeting on March 4, 2020 occurred in Bolingbrook. Tricoci then incredibly claims Ms. Poccia "likely worked from Chicago for Fekkai and with Ulta for months" while engaged with Tricoci. It then speculates it cannot support this theory because Ms. Poccia is hiding some unspecified information. This statement, and many others like it that have pervaded these proceedings, give rise to a broader point. Ms. Poccia knows this Court will review the evidence carefully. But she does wish to raise the number of misstatements Tricoci has made throughout these proceedings. It has continually cited as "fact" allegations with no evidence, it relied on objectively false documents, and makes countless allegations about Ms. Poccia it does not and cannot support with creditable information. Tricoci deposed Ms. Poccia for three hours, Ms. Sloat for three hours, and a Fekkai representative for 90 minutes. It has received over 20,000 documents including all documents bearing any part of its name. It does not have evidence justifying the relief it pursues because none exists.

Dated:  July 16, 2021                                           Respectfully Submitted,

/s/  Colton D. Long

James M. Witz
Colton D. Long
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
(312) 372-5520
clong@littler.com

Melissa McDonagh
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA 02110
(617) 378-6000
mmcdonagh@littler.com

***Attorneys for Claudia Poccia***

## CERTIFICATE OF SERVICE

      I hereby certify that, on July 16, 2021, I caused the foregoing ***REPLY IN OPPOSITION TO TRICOCI'S MOTION FOR PRELIMINARY INJUNCTION*** to be filed with the Clerk of the Court using the ECF filing system, which electronically served counsel for all parties of record in the above-captioned action.

                                                                                  */s/ Colton D. Long*
                                                                                  One of Defendant's Attorneys